163 So. 635

### NORTHAM v. METROPOLITAN LIFE INS. CO.

6 Div. 660.

Supreme Court of Alabama.
Oct. 17, 1935.

Cabaniss & Johnston and L. D. Gardner, Jr., all of Birmingham, for appellee.

Andrew H. Knight and Whit Windham, both of Birmingham, for appellant.

KNIGHT, Justice.

The complaint, as amended, consisting of only one count, is based upon an accident policy insuring against the "result of bodily injury suffered while the policy was in full force, and caused directly and independently of all other causes by violent and accidental means." The sufficiency of the com-

plaint is not now questioned. The defendant pleaded, in short by consent, the general issue, with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action. For convenience, the parties will be referred to as they appeared in the lower court.

The case is before us on appeal by the plaintiff, and the only assignment of error presents for review the propriety of the court's action in giving, at the request of the defendant, the general affirmative charge, with hypothesis.

The sufficiency of notice and proof of loss is not questioned, nor is the fact that the policy sued on was in full force and effect, at the time the plaintiff received his injuries, controverted by the defendant. Likewise the fact that the plaintiff's injuries resulted in permanent disability up to the time of the filing of the suit is not challenged by the defendant. So the sole question in the court below was, and here is, whether the plaintiff's injuries, resulting in his permanent disability, comes within the coverage of the insurance contract. The evidence touching this phase of the plaintiff's case was without conflict.

█ Inasmuch as the lower court gave the general affirmative charge for the defendant, it remains only to determine whether there was any evidence before the jury tending to support plaintiff's case.

The defendant insured the plaintiff "against the results of bodily injuries while this policy is in force and caused directly and independently of all other causes by violent and accidental means. * * *"

But this general clause had its exceptions.

Clause 9, "Risks Excluded," is in the following words: "This insurance shall not cover suicide or any attempt thereat while sane or insane; nor shall it cover injuries, fatal or non-fatal, sustained while participating in aviation or aeronautics except as fare paying passenger; nor shall it cover accident, injury, disability, death or any other loss caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity or medical or surgical treatment therefor; *nor shall it cover injury, disability, death or any other result caused wholly or partly, directly or indirectly, by ptomaines or disease germs or any kind of infection, whether introduced or contracted accidentally or otherwise (excepting only septic infection of and through*

*a visible wound caused directly and independently of all other causes by violent and accidental means). * * *"* (Italics supplied.)

 It will then be seen that the coverage of the policy, by its terms, is extremely narrow, but parties may, if they see proper, make their own contract, so long as they do not offend some rule of law or contravene public policy. It is, as we have often of late had occasion to point out with reference to insurance contracts, the duty of the court to enforce the contracts as made by the parties, and not to rewrite, or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous. Nor are we justified in refining away the terms of a contract expressed with sufficient clearness to convey the intent and meaning of the contracting parties. McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349; Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; Day v. Home Ins. Co., 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652; Union Mutual Aid Ass'n v. Carroway, 201 Ala. 414, 78 So. 792; Montgomery Enterprises et al. v. Empire Theater Co., 204 Ala. 566, 86 So. 880, 19 A. L. R. 987; Protective Life Ins. Co. v. Hale, 230 Ala. 323, 161 So. 248; Alabama Gold Life Ins. Co. v. Thomas, 74 Ala. 578.

█ As above pointed out, there is no conflict in the evidence. It appears that on or about the 7th or 8th day of January, 1933, the plaintiff, in shaving, noticed a slight pimple on the left side of his face, which he "took to be a couple of hairs doubled up under the skin." He thereupon took a needle which he knew was not sterilized, and raised the hairs so that he could remove the same with tweezers. With the tweezers he extracted the hairs, and in so removing them made an open and visible wound, from which a slight amount of blood oozed out. No slip or mishap occurred, so far as the evidence shows, in pricking the skin and extracting the hairs. The following morning plaintiff noticed that this particular portion of his face was red and swollen. Prior to the occurrence, plaintiff's health was good. The wound on plaintiff's face grew steadily worse day by day. Physicians were called in to treat him; he was removed to the hospital. Infection, described by the physicians to be osteomyelitis, set in, and as a result dire consequences ensued rendering plaintiff

wholly disabled, and which disability continued to the time of the filing of the suit. The medical experts testified that, in their opinion, the disease germs were introduced into plaintiff's system by the instrument used in raising the hairs. According to their testimony, osteomyelitis is an acute destructive disease of the bone and is caused by blood-stream infection. The source of the infection comes from the outside; it must be introduced, and, according to the physician's testimony, the trouble from which the plaintiff suffered would be properly classified as *septic infection.*

Unquestionably, from the evidence in the case, whatever visible wound there was on plaintiff's face was intentionally inflicted by himself, and the question to be determined is, Does the policy, under its narrow and limited coverage, cover the plaintiff's case? Confessedly, if the plaintiff can point to any provision of the policy contract which aids him, it is found in the following words: *"Excepting only septic infection of and through a visible wound caused directly and independently of all other causes by violent and accidental means."* Unless plaintiff's case comes within this exception to "Risks Excluded" by clause 9 of the policy contract, the plaintiff has no cause of action, and the court properly gave the affirmative charge for defendant.

The appellant has brought to our attention some authorities which he insists sustain his contention that the injury he received was caused by accidental means and through a visible wound.

While some authorities seem not to draw, or to recognize, the distinction, yet by the great weight of the adjudged cases a distinction is drawn between an accidental result and a result which is caused by accidental means; the former class holding that the result need only be accidental, while the latter class hold that, not only must the result be accidental, but the cause or means which produced or brought about the result must also be accidental.

The cases principally relied upon by the appellant are Lewis v. Ocean Accident & Guarantee Corporation, Limited, 224 N. Y. 18, 120 N. E. 56, 57, 7 A. L. R. 1129, Interstate Business Men's Accident Ass'n v. Lewis (C. C. A.) 257 F. 241, and Iowa State Traveling Men's Ass'n v. Lewis (C. C. A.) 257 F. 552. These cases do not seem to recognize the above-noted distinction, and in those cases the court held that the

unintentional introduction of disease germs into the body through an opening intentionally made, resulting in infection, is an injury caused by accidental means.

The first-mentioned case, Lewis v. Ocean Accident & Guarantee Corporation, Limited, was decided by the Court of Appeals of New York. The facts in the case were: That the insured had a pimple on his lip, which looked like an ordinary pimple. A day or so after it first made its appearance the pimple grew larger and more inflamed. A physician was called in, and this physician testified that, when he saw the patient, there was a punctured wound in the lip, which had inflamed and infected the deep tissues. The lip was opened by the physicians, and remedies were applied. They were of no avail. The infection grew, and a week later the insured became paralyzed and blind. The patient died. His death was pronounced due to inflammation of the brain, caused by the germ known as the staphylococcus aureus. The germ came from the infected pimple.

In speaking for the court, Justice Cardozo observed: "We think there is testimony from which a jury might find that the pimple had been punctured by some instrument [but whether intentionally or not does not appear from the opinion], and that the result of the puncture was an infection of the tissues. If that is what happened, there was an accident. We have held that infection resulting from the use of a hypodermic needle is caused by 'accidental means.' Bailey v. Interstate Casualty Co., 8 App. Div. 127, 40 N. Y. S. 513; Id., 158 N. Y. 723, 53 N. E. 1123; Marchi v. Ætna. Life Ins. Co., 140 App. Div. 901, 125 N. Y. S. 1130; Id., 205 N. Y. 606, 98 N. E. 1108. The same thing must be true of infection caused by the puncture of a pimple. Unexpected consequences have resulted from an act which seemed trivial and innocent in the doing. Of itself, the scratch or the puncture was harmless. Unexpectedly it drove destructive germs beneath the skin, and thereby became lethal. To the scientist who traces the origin of disease there may seem to be no accident in all this. 'Probably it is true to say that in the strictest sense, and dealing with the region of physical nature, there is no such thing as an accident.' Halsbury, L. C., in Brintons v. Turvey, L. R. 1905 A. C. 230, 233. But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man. Brintons v. Tur-

vey, supra; Ismay, Imrie & Co. v. Williamson, L. R. 1908 A. C. 437, 440. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test—the one that is applied in the common speech of men—is also the test to be applied by courts."

It is to be noted that the policy contract in the above case covered "loss or disability resulting directly, independently, and exclusively of all other causes from bodily injuries effected solely, through accidental means. The general coverage clause in the contract construed in the above case is very similar to the corresponding clause in the contract now before the court, but the contract in the New York case did not contain, so far as the report of the case shows, the excepted risks contained in the contract in the instant case, nor did it narrow the coverage as to injuries due to infection to "septic infection of and through a visible wound caused directly and independently of all other causes by violent and accidental means."

It will thus be seen that Justice Cardozo was dealing with a policy contract much broader in its coverage than the contract now before us.

The two cases of Interstate Business Men's Accident Ass'n v. Lewis, and Iowa State Traveling Men's Ass'n v. Lewis, supra, are not now authorities in the court of their rendition. The Circuit Court of Appeals of the Eighth Circuit, the court deciding both of said cases, departed from its holding in said cases in the more recent case of Connecticut General Life Ins. Co. v. Allen (1933) 64 F.(2d) 840, 842.

In the Connecticut General Life Ins. Co. Case, supra, it was held, Judge Gardner speaking for the court:

"These contentions, we think, are not tenable. The policy covers death by bodily injury effected directly through accidental means. The bodily injury must be the exclusive cause of the death, and the policy provides that it shall not cover bacterial infections, except pyogenic infections, which shall occur simultaneously with and through accidental cut or wound. It was incumbent upon plaintiff to prove that the insured's death resulted from a bodily injury which was effected solely through accidental means, and it was incumbent upon her to prove that the pyogenic infection occurred simultaneously with and through an accidental cut or wound. Lincoln National Life Ins. Co. v. Erickson (C. C. A. 8) 42 F.(2d) 997, 1000; Order of United Commercial Travelers v. Shane (C. C. A. 8) 64 F.(2d) 55. See also: Ramsey v. Fidelity & Cas. Co., 143 Tenn. 42, 223 S. W. 841, 13 A. L. R. 651; Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56; Zach v. Fidelity & Cas. Co. (Mo. App.) 272 S. W. 995.

"This cause is ruled by the decision of this court in Lincoln National Life Ins. Co. v. Erickson, supra, where, in an opinion by Judge Booth, it is among other things said: 'There was no direct proof, however, how, where, when, or under what circumstances the abrasion was produced, and no proof whatever of any *accidental means producing the abrasion. The abrasion may have been intentionally produced and with means* expressly selected for the purpose. (Italics supplied.) And there was no proof that the bodily injury, namely, the abrasion, caused the death. The death, according to the medical testimony, was caused by the streptococcic infection in the blood. The abrasion, of course, did not create or produce the streptococci, nor cause them to enter the blood. * * * So far as the evidence shows, the streptococci may have entered the blood at the time the abrasion was made or some time after the abrasion was made.'

"So, in the instant case, there is no room for speculation as to the cuts in the mouth of the deceased being intentionally produced, and that they were produced, not by accidental means, but 'by means expressly selected for the purpose.' As said by this court in the Erickson Case, supra: ' * * The deceased was insured, not against *accidental results of intended means,* but against death resulting from a bodily injury effected directly through *external, violent, and accidental means.* It may be proper enough, loosely to speak of the death as an accidental one; but the evidence, in our judgment fails to show a death resulting from a bodily injury effected directly by accidental means.' And further the court said: 'It is just as possible in the case at bar that deceased himself intentionally opened a pimple on his chin, either at home or in the barber shop, or that he directed the barber so to do, as that the abrasion was accidentally caused.' [Italics supplied.]

"It seems too plain for argument that the evidence in this case does not establish that

insured's injury resulting in his death was effected by accidental means. It is possible there may have been cuts and abrasions which should not have been made, but there were none which were not intended to be made, and if the testimony was as consistent with the hypothesis that the infection entered through an incision intentionally made as that it entered through an incision unintentionally made, then it tended to prove neither, and as the burden of proof was on the plaintiff, she could not recover. Eggen v. United States (C. C. A. 8) 58 F.(2d) 616."

In the case of Stone v. Fidelity & Casualty Co., 133 Tenn. 672, 673, 182 S. W. 252, L. R. A. 1916D, 536, Ann. Cas. 1917A, 86, it is held that the general rule is that an injury is not produced by accidental means within the meaning of an accident policy, where the injury is the natural result of an act or acts, in which the insured intentionally engaged. In that case the court said:

"A person may do certain acts the result of which produces unforeseen consequences resulting in what is termed an accident; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by voluntary, natural, ordinary movement, executed exactly as was intended.

"Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result. *It is not sufficient that the injury be unusual and unexpected, but the cause itself must have been unexpected and accidental.*" (Italics ours.)

The Supreme Court of Tennessee, at a later date, in the case of Ramsey v. Fidelity & Casualty Co., 143 Tenn. 42, 223 S. W. 841, 13 A. L. R. 651, affirmed the rule declared by it in the above case, holding, according to what it conceives to be the great weight of authority, the rule to be that the *means* must be accidental, that it is not sufficient that the illness or death that followed the means was accidental.

In Rock v. Travelers' Insurance Co., 172 Cal. 462, 156 P. 1029, 1030, L. R. A. 1916E, 1196, the court held: "A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. Policies like the one before us have been before the courts in many cases, and the great weight of authority, we think, sustains the view which we have just expressed. Thus in Clidero v. Scottish Accident Ins. Co., 29 Scot. L. R. 303, Lord Adam said: 'The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are, to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.' "

In Salinger v. Fidelity & Casualty Co., 178 Ky. 369, 198 S. W. 1163, 1164, L. R. A. 1918C, 101, it was said: "So the question for decision is reduced to this proposition, Does an intentional exertion constitute '*accidental means*' of injury within the provisions of the policy? It may be treated as established by the great weight of authority that an injury is not produced by accidental means within the terms of an accident insurance policy, where it is the direct, though unexpected, result of an ordinary act in which the insured intentionally engages."

In Smith v. Travelers' Ins. Co., 219 Mass. 147, 106 N. E. 607, L. R. A. 1915B, 872, it is said: "But there was nothing accidental in the inhalation of this douche. The deceased did exactly what he intended to do. This particular act of inhalation, though harder or more violent than usual, was not, so far as appears, harder or more violent than he intended it to be. There was no shock or surprise during the inhalation which made him draw a deeper breath than he intended to draw, nothing strange or unusual about the circumstances. The external act was exactly what he designated [designed] it to be, though it produced more internal consequences which he had not foreseen. Accordingly there was no bodily injury effected through a means which was both external and accidental. But it is

only for a death resulting from injury effected through such means that the defendant is made responsible by the policy. It is not sufficient that the death or the illness that caused the death may have been an accidental result of the external cause, but that the cause itself must have been, *not only external and violent, but also accidental.*" (Italics supplied.)

In Kimball v. Massachusetts Accident Co., 44 R. I. 264, 117 A. 228, 24 A. L. R. 726, it was held: "However unexpected the result might be, no recovery could be allowed under such a provision unless there was something unexpected in the cause or means which produced the result."

Many cases could be cited to the effect that there is a clear distinction between accidental results and results produced by accidental means. This distinction was recognized by the Supreme Court of the United States in the case of United States Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60.

In the case at bar, the policy contract excludes liability on account of "injury, disability or death or any other result caused wholly or partly, directly, or indirectly, by ptomaines or *disease germs or any kind of infection, whether introduced or contracted accidentally or otherwise.*" However, to this exclusion clause, denying liability for injury resulting from disease germs or infection, there is one exception, and one exception only, and that is, there may be a recovery for injury resulting from septic infection through a visible wound caused directly and independently of all other causes by violent and accidental means.' Thus it appears that, before a recovery can be had, the wound must not only be a visible one, but it (the wound) must have been caused by violent and accidental means. While the plaintiff's injury and consequent disability may be in a sense accidental, yet that is not sufficient; the wound through which the septic infection entered plaintiff's body must have been caused by accident. The evidence shows that this wound was intentionally made by plaintiff by the use of the needle and tweezers; and, while the results were unexpected, unforeseen, and unusual, the language of the policy precludes a recovery.

We are in accord with the lower court in holding that plaintiff, under the terms of the policy contract and the evidence in the case, showed no right to recover.

Accordingly the judgment of the circuit court is due to be, and is, affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.