179 So. 382

### ADKINS v. METROPOLITAN LIFE INS. CO.

6 Div. 232.

Supreme Court of Alabama.

Feb. 24, 1938.

Taylor v. Higgins, of Birmingham, for appellant.

Cabaniss & Johnston and L. D. Gardner, Jr., all of Birmingham, for appellee.

KNIGHT, Justice.

Suit by the beneficiary of a life insurance policy to recover accidental death benefit of $2,000, alleged to be due under the provisions of a policy of life insurance, issued by the Metropolitan Life Insurance Company, upon the life of Durward Adkins, a son of the beneficiary.

In the discussion of this case, we shall refer to the parties as plaintiff and defendant, just as they appeared in the court below.

The insured died on July 6, 1936, while the insurance contract was in full force and effect, and following his death the plaintiff submitted proof of death to the defendant, and the latter thereupon paid to the plaintiff the $2,000 called for in the face of the policy, but declined to pay the additional $2,000 claimed and demanded under the supplementary contract. So this suit involves only this last-named sum of money.

The complaint, consisting of one count, is predicated upon the following provision contained in the policy contract:

The company "Hereby agreed to pay to the Beneficiary or Beneficiaries of record under said policy, in addition to the amount payable according to the terms of said policy, the sum of 2000.00 dollars, upon receipt, at the Home Office of the Company in the City of New York, of due proof of the death of the insured, as the result, *directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, provided,* * * * and (5) *that death*

*shall not have been the result of self destruction, whether sane or insane, or caused by or contributed to, directly or indirectly, or wholly or partially by disease, or by bodily or mental infirmity."* (Italics supplied.)

Upon the conclusion of the evidence the court gave, at the request of the defendant, the general affirmative charge in its behalf. There was verdict for defendant, and judgment accordingly.

The plaintiff, being of the opinion that under the evidence a jury question was presented, has prosecuted this appeal, and here assigns for error the above-stated ruling of the court in giving the affirmative charge for the defendant.

The appellant plaintiff says in brief: "Therefore, the sole question presented by this appeal is, whether death caused by heatstroke is accidental death within the meaning of the policy of insurance in question? If it is, the court below erred in giving the affirmative charge for the defendant, and judgment of the court below should be reversed. If it is not, then the court below was correct in its ruling, and judgment should be affirmed."

However, we are of the opinion that, under the policy contract, the first question presented is whether the insured's death from "heat stroke," the insured's exposure being voluntary and intentional, and nothing else appearing, was caused by or through accidental means within the meaning of the policy of insurance sued on. If it is held that such death was brought about or caused by external accidental means, within the meaning of the policy, or if, under the evidence, it was a jury question, then the next question to arise is, Did the evidence support, without adverse inference, the defendant's plea that the insured's death was caused by, or contributed to, directly or indirectly, or wholly or partially, by disease, or by bodily or mental infirmity? This last-stated question was within the issues of the case.

The evidence tended to show that the insured was employed by the Tennessee, Coal & Iron Company, and worked in the company's power house of the blast furnace department. This building was 330 feet long by 150 feet wide and has steam turbines and steam condensers in it causing artificial heat. On an average it is approximately seven degrees warmer inside the building than it is on the outside. On July 3, 1936, the last day the insured worked, he worked on the condenser which had been shut off and was cool. He worked on this condenser in the usual manner. There was no testimony tending to show that the power house was any hotter on July 3, 1936, than was usual for that time of the year. None of the turbines or pipes broke on that day so as to let out steam in the power house. The insured worked the entire shift that day, and when he went to work on that morning he had the appearance of being a healthy man, as viewed by a fellow workman, who testified in the case. This fellow workman testified that he "went back to his home that night" with insured. The evidence does not show that insured complained of being then ill.

Dr. J. A. Moore, a member of the medical staff of the Tennessee Coal & Iron Company, testified that he attended the insured professionally during July, 1936, that he had examined, and was familiar with the condition of, the insured at the time of and just prior to his death. He gave it as his opinion that the cause of insured's death was heatstroke. He testified on cross-examination that the insured had Addison's disease, and that it was a fatal disease; that in this disease the adrenal glands "atrophy away"; that the insured had been afflicted with this disease for approximately five years; that witness made out the death certificate for the Bureau of Health of Jefferson County; and that he stated in the certificate that Addison's disease was a contributing cause of insured's death, "and it was." This witness gave it as his opinion that a person in the advanced stage of Addison's disease, such as to render the disease fatal, would not be able to perform the duties of a person working in a boiler room; that one of the characteristic symptoms of most individuals having the disease in the terminal stage is that they are not able to work.

Dr. George Graham was examined by, and testified on behalf of, defendant. This witness testified that he specialized in pathology, which is the laboratory side of medicine. That he performed an autopsy on insured on July 6, 1936, and found an advanced atrophy of the adrenal glands as the outstanding thing. The adrenal glands are two little glands that sit over the kidneys, and they have a very important regulating influence on body functions in general, particularly on circulation. If those glands are absent or have completely atrophied, the person will die. In this case

witness could not see any adrenal glands at all. They could not be found. That witness examined the tissue with microscope, and was able to find only a few remaining cells. The glands were gone, and only traces could be found. That this condition alone was sufficient to produce death. A person suffering from Addison's disease is very susceptible to temperature and heat, much more susceptible. That, assuming this man had a heatstroke, it would be a reasonable assumption to say that the heatstroke and Addison's disease caused death. "In my opinion the evidence which I found of heat stroke was not in and of itself sufficient to cause death." In the opinion of the witness a person suffering with Addison's disease in an advanced stage could not perform hard manual labor.

This court, in line with the great weight of authority, has recognized and applied the distinction between accidental results and results produced by accidental means, in cases where the stipulated liability is for injury resulting from bodily injuries sustained through external, violent, and accidental means. This was pointed out in the case of Northam v. Metropolitan Life Ins. Co., 231 Ala. 105, 163 So. 635, 636, 111 A.L.R. 622, where it was observed: "While some authorities seem not to draw, or to recognize, the distinction, yet by the great weight of the adjudged cases a distinction is drawn between an accidental result and a result which is caused by accidental means; the former class holding that the result need only be accidental, while the latter class hold that, not only must the result be accidental, but the cause or means which produced or brought about the result must also be accidental."

The above-stated conclusion was reached by this court only after a careful review of many adjudged cases throughout the United States. Many of these cases are cited and reviewed in the Northam Case, supra.

And in the case of Inter-Ocean Casualty Co. v. Jordan, 227 Ala. 383, 150 So. 147, the distinction between *accidental* result and a result which is caused by *accidental means,* is recognized. There it was observed, "The test is the means of the injury."

In our case of Inter-Ocean Casualty Co. v. Foster, 226 Ala. 348, 147 So. 127, 130, it was observed: "We think it is very well settled that freezing is not of itself an accident, but becomes so only when 'joined with a fortuitous, unusual, unexpected circumstance or event,' which operating upon cold weather as a condition produces the result as a proximate consequence of such fortuitous circumstances. Freezing is then the result of 'external violent and accidental means,' but not so unless thus caused."

The Supreme Court of the United States, in the case of Landress v. Phoenix Mutual Life Ins. Co. et al., 291 U.S. 491, 54 S.Ct. 461, 462, 78 L.Ed. 934, 90 A.L.R. 1382, in an opinion by Justice Stone, in construing a policy of insurance, in which petitioner sought recovery of amounts stipulated to be paid, if death should result "directly and independently of all other causes from bodily injuries effected through *external, violent* and accidental means, and not directly or indirectly, wholly or partly from disease or physical or mental infirmity," held:

"Petitioner argues that the death, resulting from voluntary exposure to the sun's rays under normal conditions, was accidental in the common or popular sense of the term, and should therefore be held to be within the liability clauses of the policies. But it is not enough, to establish liability under these clauses, that the death or injury *was accidental* in the understanding of the average man—that the result of the exposure 'was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident,' see Lewis v. Ocean Accident & G. Corp., 224 N.Y. 18, 21, 120 N.E. 56, 7 A.L.R. 1129; see, also, Aetna Life Ins. Co. v. Portland Gas & Coke Co. [9 Cir.] 229 F. 552, L.R.A. 1916D, 1027, for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. *The insurance is not against an accidental result.* The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental. The external means is stated to be the rays of the sun, to which the insured voluntarily exposed himself. * * *

"This distinction between *accidental external means* and *accidental result* has been generally recognized and applied where the stipulated liability is for injury resulting from an accidental external means. See Aetna Life Ins. Co. v. Brand [2 Cir.] 265 F. 6, 13 A.L.R. 657; Lincoln National

Ins. Co. v. Erickson [8 Cir.] 42 F.2d 997; Jensma v. Sun Life Assur. Co. [9 Cir.] 64 F.2d 457 [supra]; Order of United Commercial Travelers v. Shane [8 Cir.] 64 F.2d 55; Contra, Mutual Life Ins. Co. v. Dodge [4 Cir.] 11 F.2d 486, 59 A.L.R. 1290. An injury from sunstroke, when resulting from *voluntary exposure* by an insured to the sun's rays, even *though an accident,* see Ismay, Imrie & Co. v. Williamson, [1908] A.C. 437, has been generally held not to have been caused by external accidental means. Nickman v. New York Life Ins. Co. [6 Cir.] 39 F.2d 763; Paist v. Aetna Life Ins. Co. (D.C.) 54 F.2d 393; Harloe v. California State Life Ins. Co., 206 Cal. 141, 273 P. 560; Continental Casualty Co. v. Pittman, 145 Ga. 641, 89 S.E. 716; Semancik v. Continental Casualty Co., 56 Pa.Super. 392; see Elsey v. Fidelity & Casualty Co., 187 Ind. 447, 120 N.E. 42, L.R.A.1918F, 646; Richards v. Standard Accident Ins. Co., 58 Utah 622, 200 P. 1017, 17 A.L.R. 1183; Contra, Continental Casualty Co. v. Bruden, 178 Ark. 683, 11 S.W.2d 493, 61 A.L.R. 1192; Lower v. Metropolitan Life Ins. Co., 111 N.J.L. 426, 168 A. 592."

The Supreme Court of Louisiana, in the recent case of Parker v. Provident Life & Accident Ins. Co., 178 La. 977, 152 So. 583, committed itself unequivocally to the proposition that distinction is to be recognized and enforced between an accidental result and a result produced by accidental means. This holding is directly in line with our holding in the case of Northam v. Metropolitan Life Ins. Co., supra.

The Supreme Court of Iowa, in the case of Riley v. Interstate Business Men's Accident Ass'n, 152 N.W. 617, 619, observed: "There is a difference between an accidental result and an accidental cause. * * * It is apparent that to entitle one to recover, under a policy like the one in question, it is not sufficient to show that the death was accidental. Death is the result of some precedent act or condition. It is traceable to some cause. It is not sufficient, to make the cause accidental, that it appear that the resulting death was unanticipated, unforeseen, and not expected as a result of the act done. It must appear that that which happened to produce the result happened through accident, in order that the proper foundation may be laid for the recovery. The policy provides recovery in the event of death, but only where death results from bodily injuries effected solely by external, violent, and accidental means."

In Schmid v. Indiana T. Acc. Ass'n, 42 Ind.App. 483, 85 N.E. 1032, 1037, and Elsey v. Fidelity & Cas. Co., Ind.App., 109 N.E. 413, the rule in Indiana is stated as follows:

"If the result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means," and that, "where an injury occurs as the direct result of intentional acts, it is not produced by accidental means."

The Indiana rule was adopted and followed by the federal courts in the case of Lewis v. Iowa State Traveling Men's Ass'n, D.C., 248 F. 602, and affirmed in 8 Cir., 257 F. 552.

Mr. Cooley, in his briefs on Insurance, 2d Ed., vol. 6, p. 5235, announces the following rule: "A person may do certain acts, the result of which may produce unforeseen consequences, and may produce what is commonly called accidental injury; but when the means are exactly what he intended to use and used, the means are not accidental within the meaning of the policy."

In the case of U. S. Fidelity & Guaranty Co. v. Blum, 9 Cir., 270 F. 946, 947, the court held: "There is a distinction between accidental death which may be an unexpected or unintentional result of a voluntary act, and death from accidental means, which must result from some unforeseen or unintended act."

In Smith v. Travelers' Ins. Co., 219 Mass. 147, 106 N.E. 607, 608, L.R.A.1915B, 872, it was observed: "It is not sufficient that the death or the illness that caused the death may have been an *accidental result* of the *external cause,* but that *cause itself* must have been, not merely external and violent, but also *accidental.*" (Italics supplied.)

In Clidero v. Scottish Accident Ins. Co., 29 Scot.L.R., 303, Lord Adam observed: "The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of the policy, whether the means by which the injury was caused were *accidental means.*" (Italics supplied.)

In the case of Smith v. Metropolitan Life Ins. Co., La.App., 155 So. 789, it was held that death of an employee who, while performing regular duties of washing out a boiler, became overheated, and who later died of heat and exhaustion, was not caused by *accidental means* within double indemnity provision of group insurance. (Italics supplied.) The terms of the policy were the same as here.

In the case of Scott v. Metropolitan Life Ins. Co., 169 Tenn. 351, 87 S.W.2d 1011, the Supreme Court of Tennessee, in construing a policy similar to the one in the instant case, in an opinion by Chief Justice Green, held that the insured's death from sunstroke, or heat prostration, while firing a boiler in a mill, did not result through *"'accidental means'* within double indemnity provision of life policy, in absence of allegation that insured's exposure was other than voluntary and intentional, or that heat from boiler was unforeseen, unexpected, or unusual."

The Supreme Court of Georgia, in the case of Continental Casualty Company v. Pittman, 145 Ga. 641, 89 S.E. 716, in construing a policy similar to the one in the instant case, held that the insured's death from sunstroke, which overcame him while performing his ordinary duties as fireman on a locomotive engine on a hot summer day, and nothing appearing to show that the sunstroke was due to "external, violent, and accidental means," within the meaning of those terms as used in the policy, was not within the coverage of the policy.

In addition to the foregoing, we might add many other authorities, supporting our holding in the cases of Northam v. Metropolitan Life Ins. Co., supra, and Inter-Ocean Casualty Co. v. Foster, supra, but we deem it wholly unnecessary. The holding in those cases is sound, and supported by the overwhelming weight of authority.

The evidence in the case at bar shows, without any sort of conflict, that the insured was performing his usual and customary duties, voluntarily assumed, in his usual and customary place, under usual and customary conditions, when he suffered the heatstroke, if in fact he did suffer such a stroke. There is not the slightest suggestion in the evidence, and no reasonable inference to be drawn therefrom, that the temperature of the building, the weather or other circumstances, external to the insured's own body, operated to produce the unanticipated injury, which was unknown or unforeseen by the insured. From aught appearing in the evidence, the temperature in the building was no greater than usual at that period of the year, and nothing occurred in the building, on the day the insured is claimed to have suffered the heatstroke, which created any change in the usual condition which obtained in the building.

The evidence wholly fails to support the averment of plaintiff's complaint, viz.: "That the insured's death was caused as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent, and accidental means, while said policy was in force," and, therefore, the defendant was entitled to the general affirmative charge, and the court properly so instructed the jury, at defendant's request.

Let it here be said that the decisions in workmen's compensation cases may be left out of consideration. Under the statute, Code, § 7534 et seq., as amended, the employer is liable for injuries from accidents to employees arising out of and in the course of their employment. "The statute is concerned to afford protection against accidental results. In the sense of the statute, broadly speaking, the employment itself is the means of the accident and the employment, of course, is never accidental." Scott v. Metropolitan Life Ins. Co., supra; Ex parte Margaret L. Pow, Ala.Sup., 180 So. 288,[1] was dealing with an accident arising under our Workmen's Compensation Act, and not with an accident under an insurance policy, where the parties for themselves had stipulated that liability should arise only for an injury resulting from accidental external means. The statute is concerned "to afford protection against accidental results"; as pointed out in the Scott Case, supra, and the Pow Case, supra. The Pow Case is sound, and we adhere to it, and we are now dealing with a policy contract where the parties have stipulated that liability should accrue only for an injury resulting from an accidental external means.

Moreover, the policy contract in the instant case contains this provision, excluding liability: Provided, "5. That death shall not have been the result of self-destruction, whether sane or insane, *or*

---

[1] Post, p. 580.

*caused by or contributed to, directly or indirectly, or wholly or partially; by disease, or by bodily or mental infirmity."* The provision of the policy italicized was pleaded in defense of the action. The evidence, without conflict, shows that at the time it is alleged the insured suffered the heatstroke he was suffering from Addison's disease, a fatal disease, and that this disease was an efficient, proximate contributing cause of the death of the insured. This plea of the defendant being proved by the uncontroverted evidence in the case, and without any sort of conflict, the defendant was also due the general charge on this phase of the case. First Nat. Bank v. Equitable Life Assur. Society, 225 Ala. 586, 144 So. 451.

It only remains to be said that the trial court committed no error in giving the general affirmative charge for the defendant, and its judgment is due to be, and is, affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.