103 So.2d 44

Henry BULLARD

v.

EMERGENCY AID INSURANCE COMPANY.

4 Div. 309.

Court of Appeals of Alabama.

Feb. 12, 1957.

Rehearing Denied April 23, 1957.

C. L. Rowe, Elba, for appellant.

**94**

J. C. Fleming, Elba, for appellee.

PRICE, Judge.

Appellant brought suit on a policy of group accident insurance issued by appellee on June 1, 1953 insuring the employees of Helms Lumber Company "against loss resulting directly and independently of all other causes from bodily injuries sustained * * * solely through violent, external and accidental means." A rider attached to the policy provided: "This rider when attached to policy No. 4491 becomes a part of the policy. Effective 1st day of June 1953 the terms of this policy are changed as follows: The Total Disability Benefit—$60.00 per month not to exceed six (6) months for any one injury. Coverage under said policy is limited to injuries and accidents while on the job."

The complaint, consisting of one count, claimed $690 for total disability' benefits under said policy for a period of six months, hospital expenses for a period of 50 days, to the maximum provided in the policy, and surgical benefits to the maximum provided therein, on account of two injuries suffered by the plaintiff, on September 24, 1953, and October 22, 1953.

Defendant pleaded, in short by consent, the general issue, with leave to give in evidence any matter which, if well pleaded, would be admissible, with like leave on the part of plaintiff.

When the plaintiff had rested his case in chief, the court granted defendant's motion to exclude the evidence as to any injury occurring on October 22, 1953, on the ground the evidence showed no notice was ever given to defendant of such alleged injury.

At the conclusion of all the testimony the court gave the following written charge: "The court charges the jury that if you believe the evidence in this case, your verdict should be for the defendant." The court then gave the jury a written form of verdict and asked that it be signed by a member of the jury as foreman. The court then explained to the jury his action in giving the affirmative charge for the defendant. The record discloses that the jury, after hesitation, and after the court and plaintiff's counsel made statements to the jury as to jury's duty and concerning the court's right to direct a verdict, rendered this verdict: "We, the jury, find for defendant."

The effect of this action of the court was to direct a verdict for defendant. Cannon v. Louisville & N. R. Co., 252 Ala. 571, 42 So.2d 340; O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 168 So. 580, at page 583; Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812.

"And it is also well settled that where by the undisputed evidence plaintiff has not shown that he is entitled to recover on his complaint, the court may direct a verdict for defendant, and it is immaterial whether the jury believe the evidence or not. In either event plaintiff has not proven his complaint." (Authorities cited, supra.)

The plaintiff testified that on September 24, 1953, while working at his regular job of rolling logs and helping unload logs from trucks at Helms sawmill, in undertaking to turn an extremely heavy log with a "peavy," and exerting all his strength in the effort, or, in the words of the witness, "I was just putting every pound I had to it * * * my back just went to hurting, stinging, and I had a chill." That night he was taken to Edge Hospital at Troy, where he remained for four days under the treatment of Dr. Donald Crook; his legs were first put in traction, and after he was out of traction a cast was put on his back. The doctor advised him not to go back to work for three weeks. During most of this time he was in bed, but he reported to Dr. Crook once a week for treatment.

On the 22nd day of October, 1953, about four days after he returned to work for Helms Lumber Company, while he was engaged in his usual duties of handling logs with a peavy, his peavy slipped off a log and he fell back against another log, and again injured his back. Plaintiff stated that his employer was not there when the accident occurred, but he came up soon afterward and took over the plaintiff's job of manipulating the logs with the peavy. Plaintiff lay down for a couple of hours and on account of a breakdown at the mill the crew left early. Plaintiff was suffering severe pain and the next morning he went to Elba to see Dr. Johnson. After examining him Dr. Johnson sent him to Dr. Bostwick, a specialist in neuro-surgery, at Montgomery. The plaintiff's condition was diagnosed as a ruptured disc. Dr. Bostwick and Dr. Everest, an orthopedic specialist, performed an operation and removed the extrusion from the disc. Plaintiff was confined to St. Margaret's Hospital a total of 17 days. The various hospital charges amounted to $216.20, and the surgeon's fees were $350.

Plaintiff was readmitted to St. Margaret's Hospital in March, 1954, under the treatment of Dr. Kaiser, an orthopedic specialist. Dr. Kaiser manipulated the lower back under anesthesia, and fitted him with a brace. He was under Dr. Kaiser's treatment through the Rehabilitation Section of the Public Welfare Department, and was at the hospital for a month.

Considerable medical evidence was offered by the various physicians as to the operation and the condition and treatment of plaintiff's back. There was also evidence offered in defendant's behalf that plaintiff had received treatment for a back condition prior to the dates of the alleged injuries. In view of our decision as to the questions of law involved on this appeal a detailed statement of this evidence is unnecessary.

On cross-examination plaintiff testified that he received a check from defendant in the amount of $68, dated November 6, 1953, payable to himself and Dr. Donald H. Crook; that he gave Dr. Bostwick information for filling out the report of the accident; that he had his wife to write a letter to Mr. L. S. Rainer; that in response to that letter and to Dr. Bostwick's report dated November 7, 1953, he received a check, dated January 8, 1954, from defendant in the sum of $215, payable to plaintiff and Helms Lumber Co.; plaintiff testified that he could neither read nor write and that he did not know this check bore the notation "Final settlement of claim;" that he said nothing further about his claim until March 17, 1954, when he employed an attorney; that the first time he was hurt, on September 24, was about 3:00 or 3:30 in the afternoon; that when he was hurt the second time, on October 22, it was in the morning, about two hours before lunch; that in giving Dr. Bostwick the history of the accident he told him that he was hurt twice; that he didn't know how it happened that the Doctor's report gave the date of the accident as September 24th; that his wife gave the information to Doctor Bostwick.

Defendant introduced in evidence on the cross-examination of plaintiff two checks drawn on the defendant in the sum of $68 and $215, respectively. The first was dated

November 6, 1953, payable to plaintiff and Dr. Crook and both bore the notation "Settlement of claim." The second, dated January 8, 1954, was payable to plaintiff and Helms Lumber Company in "Final Settlement of Claim." Defendant also introduced in evidence surgeon's report of Dr. Crook, on defendant's form, dated October 20, 1953, on the bottom of which the $68 was computed, and surgeon's report on like form, of Dr. Bostwick, dated November 7, 1953; with computation presumably by defendant's home office on bottom of page amounting to $215. Both reports gave the date of the accident as September 24, 1953. Dr. Crook's report stated that the injury occurred, in the patient's own words, "Strained back while lifting at saw mill." Dr. Bostwick's report stated the accident as, "While turning a flat log wrenched my back."

The plaintiff testified that he had never talked with anyone at the Emergency Aid Insurance Company about his claim under the policy and that he had never personally notified defendant that he suffered an accident on October 22, 1953. He further testified that the policy was in his employer's possession and that he had never seen it until about the time suit was filed.

Plaintiff introduced in evidence a letter written by his attorney to defendant on March 17, 1954, in which it was stated that plaintiff had referred to him his "Claim under the above captioned policy, arising out of an accident at the Thomas L. Helms Mill, where he was employed, near Union Springs, Alabama, which occurred on 24 September 1953. Mr. Bullard advises me that you have had partial medical reports on this claim and have paid for his benefit $68 on his hospital bill at Troy and $215 on his hospital bill at Montgomery. * * * His hospital bills now exceed the 'hospital benefits' in section 4 of your policy. It further appears that his surgical fees for operation on his back exceed 'surgical benefits' in section 5 of your policy. * * *

"Mr. Bullard says that you have paid him nothing under the 'total disability ben-

efit rider' of your policy, maximum of $60 per month for a period of six months. You will please send me the necessary medical proof blanks for execution by Drs. Bostwick, Crook, Johnson and Kaiser, so that Mr. Bullard's claim for the maximum benefit, as per the rider, and the maximum hospital and surgical benefit, as per sections 4 and 5 of the policy, may be put in line for payment."

Mr. L. S. Rainer, Supervisor of defendant's Casualty Department, replying to counsel's letter, wrote that "In reviewing the file on Mr. Bullard, I find the injury occurred on September 24, 1953, and was diagnosed by Dr. Donald H. Crook, as 'strain of lower back and resulting neuritis.'" The letter further stated that $68 payment was made after receipt of the statement from Dr. Crook, and that later a report was received from Dr. Bostwick, with bills attached, and that the $215 was paid in accordance with those bills. The concluding paragraphs of the letter are as follows: "Mr. Thomas L. Helms has been in our office several times and no request has been made for further benefits under the policy. Judging from Dr. Bostwick's statement, I assumed that Mr. Bullard has been dismissed and was working."

"I will be glad to make an investigation and suggest to the company that this claim be re-opened, if the investigation reveals that we justly owe Mr. Bullard further benefits in relation with his disability. In order to hasten the investigation, I am enclosing medical forms as per your request."

Plaintiff introduced in evidence his attorney's reply to the above letter of Mr. Rainer, together with the enclosures in the letter: Surgeon's report executed by Dr. Bostwick dated May 5, 1954; surgeon's report by Dr. Crook, dated 4–23–54; and various hospital and doctors' bills. These reports of Drs. Bostwick and Crook gave as the date of accident, "24 September 1953 Hour 2:00 or 3:00 P.M.," and on both of said reports the blank space provided for stating in pati nt's own words where and

how accident occurred, was filled out as follows:

"Bullard was rolling a large log toward the sawmill carriage, using a peavy, and he strained himself and injured his lower spine."

Plaintiff also introduced in evidence letter dated June 9, 1954, addressed to Dr. Donald Crook, and signed by L. S. Rainer, Sr., copy of which was mailed to plaintiff's attorney read: "The above claiment has requested that we pay an additional amount for total disability in relation with an injury which occurred on September 24."

"We have received information which leads us to believe that Mr. Bullard's total disability was not caused by an injury received while rolling logs at the saw mill. Please write me at your earliest convenience advising if there is any doubt as to an injury while on the job being the only cause of this continuous disability. This will enable us to process the claim more intelligently and will be considered a favor."

Plaintiff's attorney testified that Mr. Rainer told him on the telephone shortly before suit was filed that defendant would not pay the claim, that they had paid $215 and $68, and that the $215 was the final payment and he had the signed check; and they had not satisfied themselves plaintiff was hurt like he said he was at Helms' mill.

In section 9, subsections 4, 5 and 6 of the policy it is provided:

"4. Written notice of injury on which claim may be based must be given to the Company within thirty days after date of the accident causing such injury.

"5. Any notice given the Company's Home Office with particulars sufficient to identify the Employed shall be deemed sufficient. Failure to give notice within the time required by this policy will not invalidate the claim if it be shown that it was impossible to give notice within the required time or that notice was given as soon as was reasonably possible.

"6. The Company will furnish the Employer with claim-proof blanks within fifteen days after receipt of notice of claim. If such forms are not so furnished, said Employer is deemed to have complied with the provisions of this policy as to proof of loss if within the time limit fixed by this policy he files with the Company written proof concerning the occurrence, character, and extent of the loss."

We are of the opinion that under the evidence set out above, this ruling of the learned trial judge was proper: "I am granting the Defendant's motion to exclude the evidence of the damage or injury that is alleged to have happened on the 22nd day of October, 1953, for the reason that the evidence shows that no notice of such injury was ever given to the company; that the only evidence shown of injury was a prior injury on September 24, 1953."

We cannot accord merit to plaintiff's insistence that by asserting particular reasons for nonpayment of the claim, but in no wise asserting that the alleged failure to give notice of the October injury was a ground for nonpayment, there was a clear waiver of such notice by defendant. We think the trial court was correct in his statement that, "I don't understand that you can waive anything that you have no knowledge of. I am holding that there is no waiver of notice of the accident that is alleged to have happened on October 22nd."

Plaintiff's suit against his former employer, T. L. Helms, for benefits under the Workmen's Compensation Act, Code 1940, Tit. 26, § 253 et seq., was pending in the Circuit Court of Pike County at the time of this trial. In rebuttal plaintiff's counsel announced to the court that Helms was called as a hostile witness. Helms admitted that he wanted to do everything in his power to see that plaintiff lost this lawsuit. He testified he knew nothing about any injury to the plaintiff while in his employ; that he gave no notice and never contacted defendant about the claim under the

policy. He testified that the policy was in his possession and that Bullard did not have it, and that neither he nor defendant issued any sort of statement to appellant in connection with the policy. He testified that over the period of years that he had insurance covering his employees under policies carried by defendant, it had been the practice and procedure that the employer did not make any statement to defendant concerning injuries to such employees; that defendant just went ahead and made its own investigation and paid the claims under the policies. The witness did admit that he made written statements to another insurance company in connection with the injuries here complained of by plaintiff, which statements were introduced in evidence.

■ The next question presented for our decision is the action of the trial court in directing a verdict for defendant because of the plaintiff's failure to establish by his evidence that his alleged injuries sustained on September 24, 1953, were caused "solely through violent, external and accidental means."

In Emergency Aid Insurance Co. v. Dobbs, 263 Ala. 594, 83 So.2d 335, 338, the court said:

"There is a distinction between an accidental death or injury, and one caused by accidental means. Such a distinction is treated by the law writers. It is an accidental death or injury if the result is an accident whether or not due to accidental means, but it is caused by accidental means, although the means employed were voluntarily rendered, if, in the act preceding the injury, something unforeseen, unusual and unexpected occurs which produces the result. Pledger v. Business Men's Accident Ass'n, Tex.Com.App., 228 S.W. 110; 45 C.J.S. Insurance § 753, p. 778." To the same effect see: Northam v. Metropolitan Life Ins. Co., 231 Ala. 105, 163 So. 635, 111 A.L.R. 622; Inter-Ocean Casualty Co. v. Foster, 226 Ala. 348, 147 So. 127; Adkins v. Metropolitan Life Ins. Co., 235 Ala. 417, 179 So. 382.

In the case of Northam v. Metropolitan Life Ins. Co., supra, the court quoted approvingly from several cases throughout the United States. One of those cases was Salinger v. Fidelity & Casualty Co., 178 Ky. 369, 198 S.W. 1163, 1164, L.R.A.1918C, 101. In that case the insured, a merchant, while in the act of lifting boxes of merchandise to a shelf higher than his head, noticed that he could not clearly see the numbers on the boxes, and found he had lost the sight of one of his eyes. He filed suit against the insurer, claiming that he had lost his eye "through accidental means," etc. The portion of the opinion quoted by our Supreme Court was [231 Ala. 105, 163 So. 639]: "'So the question for decision is reduced to this proposition, does an intentional exertion constitute "accidental means" of injury within the provisions of the policy? It may be treated as established by the great weight of authority that an injury is not produced by accidental means within the terms of an accident insurance policy, where it is the direct, though unexpected, result of an ordinary act in which the insured intentionally engages.'"

Another of the cases cited and quoted from in Northam v. Metropolitan Life Ins. Co., supra, was Rock v. Travelers' Insurance Co., 172 Cal. 462, 156 P. 1029, 1030, L.R.A.1916E, 1196. The facts of that case are set out in the Salinger case, supra, [178 Ky. 369, 198 S.W. 1164] as follows: "The insured undertook to carry a heavy casket down a flight of stairs. The exertion which he assumed was, however, beyond his strength, and imposed on his vital organs a burden they could not bear. The result of his exertion was a dilation of the heart resulting in death. In carrying the casket he did not slip or stumble nor did it fall against him; his entire purpose was carried out in precisely the manner designed and intended by Rock. Under these circumstances it was held that Rock's death was not caused through accidental means."

In Lehman v. Great Western Acc. Ass'n, 155 Iowa 737, 133 N.W. 752, 753, 42 L.

R.A.,N.S., 562, where the policy insured " 'against the effects of personal bodily injury caused solely by external, violent and accidental means,' " the question was whether insured's disability from appendicitis resulting from friction by swollen and strained muscles caused by overexertion in bowling, arose from accidental means within the terms of the policy. It was held that the plaintiff could not recover, the court saying: "Finally, it is to be borne in mind that in this case there is no evidence whatever of any slipping or falling, or of any straining of the muscles, other than the intentional strain put upon them in the voluntary and intentional act of bowling. Such a strain was not an accidental strain, and, if it produced an unintentional result and consequent injury, nevertheless the resulting injury, and not the means producing it, was accidental."

■ The provisions of the rider that "coverage under said policy is limited to injuries and accidents while on the job," does not, in our opinion, conflict with the clause in the policy insuring against loss resulting "solely through violent, external and accidental means," and does not change the coverage of the policy, as is the plaintiff's contention.

We are of the opinion the undisputed facts of this case disclose that at the time of the alleged injury on September 24, 1953, the plaintiff was engaged in the performance of his usual and ordinary duties and was doing what he intended to do and that he did not lose his balance, fall or strike any object. Under the rule above announced, we do not think it can be said that his injury was sustained "through violent, external and accidental means" within the terms of the policy.

The court properly directed a verdict for defendant.

Judgment affirmed.

Affirmed.

On Application for Rehearing

PRICE, Judge.

At appellant's request we include in the opinion the undisputed fact, as shown by the record, that appellant paid premiums on the policy in suit, in whole or in part, by means of the employer, Helms, withholding sums from his weekly wages from the date of the issuance of the policy to and including the alleged injury of October 22, 1953.

Application for rehearing overruled.