140 So. 356

## BENEFIT ASS'N OF RY. EMPLOYEES v. ARMBRUSTER.

### 6 Div. 910.

Supreme Court of Alabama.
March 10, 1932.

London, Yancey & Brower and Jim C. Smith, all of Birmingham, for appellant.

Black & Fort, G. Ernest Jones, and J. C. Burton, all of Birmingham, for appellee.

BOULDIN, J.

The action is to recover the death benefit under an accident insurance policy.

This is the third appeal. Former decisions appear in Benefit Ass'n of Ry. Employees v. Armbruster, 217 Ala. 282, 116 So. 164, 166, and Benefit Ass'n of Ry. Employees v. Armbruster, 221 Ala. 399, 129 So. 78.

Dealing with questions raised on the present appeal in the order presented in appellant's brief, we are asked to depart from our former holdings sustaining the refusal of the affirmative charge requested by defendant.

As pointed out on first appeal, supra, the policy insures against "loss resulting directly and exclusively of all other causes, from bodily injury sustained * * * solely through external, violent and accidental means," and does not contain the clause considered in some cases, excluding liability "where death has resulted wholly or in part, directly or indirectly, from disease or bodily infirmity."

Following our own case of Standard Accident Ins. Co. v. Hoehn, 215 Ala. 109, 110 So. 7, 9, which in turn approved the case of Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493, we held: "Where accidental injury aggravated a disease, and thereby hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident, it is the direct, independent, and exclusive cause of death at that time."

The point is now made that, if we adhere to the rule thus stated, it should be limited to cases of lingering disease where death results from an accident which would not have produced death at the time but for the weakened state of the insured from disease.

Admittedly plaintiff was suffering from acute appendicitis at the time. We may say the evidence without dispute, shows he had an abscessed appendix at the time of the accident, and liability is predicated on external violent and accidental injury causing a rupture and leading to the escape of pus into the abdominal cavity, resulting in general peritonitis, and so causing death at the time death did occur.

We can see no logical reason for drawing a distinction between a chronic and an acute disease. The basis of the doctrine, proximate cause of death, forbids such distinction.

We adhere to our former holding that the rule stated applies to the case in hand, and the affirmative charge was properly refused.

In the same connection, appellant strongly insists, that the weight of the evidence does not sustain the verdict, that the great weight of the dependable evidence is so clearly opposed to the verdict, that this court should reverse the trial court for denial of the motion for a new trial.

We have carefully studied the record, with the aid of briefs, and are not clearly convinced that this, a third verdict for plaintiff, and sustained by the trial court, should be disturbed.

To adequately review and discuss the evidence would consume much time and space, without serving any good purpose. We merely note that three main issues are presented in the evidence and argued in brief on this line:

First, that no accident occurred as testified to by plaintiff's witnesses.

Second, that, if it did, no rupture could occur from that kind of accident.

Third, as a fact no rupture of the abcessed or walled-in condition of the gangrenous appendix had occurred; that this was disclosed when the operation was performed several hours after the alleged accident.

The solution of the first insistence turns on the direct evidence of eyewitnesses seen and heard by the jury. Despite infirmities fully presented to the jury, we see no sufficient reason to disregard their finding as to the fact of such accident.

The second turns on both direct and expert opinion evidence—direct evidence that, by the violent jerking or bucking of the ambulance in which the patient was being removed from his home to the hospital, his attending physician was thrown from the stool where he was sitting and the patient partially thrown from the cot in a manner demonstrated before the jury; and further direct evidence of sudden pallor and weakness indicating shock, followed by surcease of the acute pain suffered from the enlarged appendical abscess up to that time.

Aside from the opinion evidence of Dr. Cocciola, the family physician, that a rupture did occur, other opinion evidence goes to the effect that a rupture of the abscessed or walled-in condition of the appendix found to be in a gangrenous condition when removed some hours later might have resulted, and was indicated by a disappearance of pain, a symptom accompanying a rupture permitting the escape of pent-up pus.

Not overlooking the conflict in evidence touching this symptom on arrival at the hospital and later, these matters were for the solution of the jury.

It seems the main insistence is the third above noted. This contention that the operation disclosed as a fact that there was no rupture permitting the escape of pus into the abdominal cavity is rested on the testimony of Dr. Torrance, the operating surgeon, a witness for defendant.

We do not so read the testimony of Dr. Torrance. In the course of his cross-examination he said: "When I performed the operation upon Mr. Armbruster I found the abscessed condition of the appendix had been ruptured, and found that the appendix itself had been ruptured. The abscess was formed by the tissues coming around the appendix to try to close up that opening that the infection had caused there."

This was followed at once by questions from defendant's counsel and answers, as follows:

"Mr. Smith: You mean the abscess or the appendix?

"Witness: The appendix.

"Mr. Smith: And not the abscessed walls?

"Witness: No, I didn't find any evidence of rupture, only the appendix ruptured."

Later the witness said: "I do not recall whether the abscessed cavity had ruptured."

It further appears only the appendix was removed, cutting through the abscessed wall, and explorations were limited to avoid the danger of spreading infection.

The witness further said: "What I call a leaking or bursted appendix usually just has an opening which leaks but does not flare wide open. When an appendix is leaking nature will immediately begin to wall it off. Just as soon as there is a leak nature begins to work, and forms this wall in order to protect the abdominal cavity from leakage, and as long as that wall is there nature does its work, the leakage into the abdominal is stopped. It is only when the leakage of the infection is turned loose into the abdominal cavity that

we have general peritonitis. Mr. Armbruster had a localized condition there to begin with, and it developed into a larger area. I think he died with general peritonitis at least on the right side. This wall which surrounds the abscess and protects the abdominal cavity could easily be broken by a severe jerk and shock to the body, maybe."

It was for the jury to weigh the whole of his evidence in connection with the other evidence.

This will suffice to indicate the reasons which lead us to the conclusion that, indulging the presumptions obtaining in such cases, the verdict should not be disturbed for want of support in the evidence, or because opposed to the great weight of the evidence.

Assignment of error No. 10 relates to the overruling of objections to a portion of the closing argument of plaintiff's counsel therein set out.

The evidence referred to by the speaker appears in the record as follows: "I testified as one of the witnesses in the first trial of this case. I do not remember on that trial testifying 'I don't recall whether the abscessed cavity had ruptured when I operated on him or not.' I don't recall answering it that way. If I made the statement in my testimony then 'I do testify that it was ruptured then;' I said that there was a breaking at that time and absorption. I don't know whether the 'walled-off' portion was ruptured when I went into it' I guess it is correct. I don't recollect making that statement. I would not say that it is not correct. I don't recall any more than I stated in there referring to transcript of his testimony on the first trial of this case, as to whether or not that walled-off portion of the abscess was ruptured when I went into it."

It is to be inferred or presumed in favor of the ruling in question that the transcript of the former evidence was before the witness.

It is not beyond the scope of legitimate argument for counsel to infer that the witness admitted in the last-copied sentence that he had testified as shown "in there," meaning the transcript of the evidence before him from which the questions and answers in his former testimony were read or seen by him.

We have copied above certain statements made on the last trial to like effect as those commented on in the argument in question. When the matters commented upon are in evidence it would require an unusual situation to reverse a cause because counsel made a mistake, if he did, in pointing out the portion of the testimony wherein such matters appeared.

Charge No. 1, given for plaintiff, assignment of error No. 7, was the same as charge No. 10, held not reversible error on the first appeal. 217 Ala. 284, 116 So. 164. The charge does not assume the facts therein recited, but the instruction is hypothesized on their finding from the evidence.

We adhere to our former ruling. Charge 3, given for plaintiff, is a correct construction of the contract, taken from the decision of this court on first appeal. 217 Ala. 284, 116 So. 164.

The trial court instructed the jury orally that they were the judges of the credibility of the witnesses, to consider testimony in the light of any interest of the witnesses; defendant's given charge 39 instructed the jury that, if Dr. Cocciola, plaintiff's witness, had made contradictory statements as to any material fact in the case, they might look to such contradictory statements to determine what credence they would give to his testimony, and in two charges that, if the witness Elliott or the witness Cocciola had willfully sworn falsely touching Mr. Armbruster's being thrown from the cot, the jury may in their discretion disregard the witness' testimony altogether. These instructions sufficiently covered the case in this regard.

Charge 41 was misleading and argumentative, and was refused without error.

The jury, not analyzing closely, may have been led to think that, if a witness through sympathy was led to testify untruly, though not willfully, or to material matters, this might brand him as unworthy of belief, and warrant a disregard of his entire testimony.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.