147 So. 127

**INTER–OCEAN CASUALTY CO. v. FOSTER.**

6 Div. 310.

Supreme Court of Alabama.

March 23, 1933.

350

Wm. S. Pritchard, Jas. W. Aird, and Thos. H. Fox, all of Birmingham, for appellee.

Rosenthal & Rosenthal and Walter S. Smith, all of Birmingham, for appellant.

FOSTER, Justice.

For the reasons discussed in the cases of National Life & Accident Ins. Co. v. Hannon, 212 Ala. 184, 101 So. 892, and Sov. Camp, W. O. W., v. Gunn, 224 Ala. 444, 140 So. 410, the demurrer to the complaint was overruled without reversible error.

■ The defendant pleaded the general issue and an accord and satisfaction. The latter defense was set up in special pleas 2 and 3. Special pleas 4, 5, 6, and 7 are in the nature of the general issue, since they aver matter inconsistent with the complaint, and amount to a denial of some feature of it. Fidelity-Phenix Fire Ins. Co. v. Murphy, ante, p. 226, 146 So. 387; Bryan v. Day, 225 Ala. 687, 145 So. 150.

■ Plaintiff filed several replications, and the court sustained demurrer to them all except to replication No. 7 to pleas 1 and 3. That replication was an averment of fraud in procuring the execution of the release set up in plea 3. The fraud consisted of a misrepresentation of its contents, and that in fact there was no settlement made nor intended, but that $50 was donated to her by defendant's agent. It did not show an offer to restore the said sum. The replication contained the essential features of that shown in the case of Illinois Cent. R. R. Co. v. Johnston, 205 Ala. 1, 87 So. 866, and which was held in that case to be free from the demurrer assigned, such as those addressed to replication No. 7 in this case. For the reasons there discussed, the judgment of the court in this case is free from error, in so far as it overrules the demurrer to said replication as an answer to plea 3.

While the same ruling was made on the demurrer to it as an answer to plea 1, the general issue, and while it has no place in pleading as an answer to the general issue, we assume that the ruling was inadvertent, but it is sufficient to say that if not, there was no prejudice to the defendant resulting from it.

Plaintiff testified to the substantive facts of replication No. 7, and some of it was corroborated by the evidence of defendant; particularly that feature which averred that the $50 was in the nature of a donation. The affirmative charge was therefore not due defendant because of such failure of proof of that replication, assuming that plea 3 was proven beyond contradiction.

Insured started out from Birmingham for Marion, shown to be about one hundred miles away. This was about 3:30 or 4 o'clock, December 24, 1929. He was warmly clad, with heavy suit and overcoat, shoes, etc., and was driving an old open car which he had recently purchased. There is no direct evidence of his experiences, but after three days and nights, his brother who resided at Marion, went for him and brought him to Marion from somewhere near Centerville on the route between Birmingham and Marion. The gas feed pipe of his car was broken and gas exhausted. When he reached Marion his feet had been frozen, and the doctors testified that through blisters on his feet tetanus germs had infected him and caused lockjaw resulting in his death a few days later. It does not appear how this brother received notice of insured's plight, nor what effort the latter made to secure help, or just where he was when his brother found him. This brother did not testify at all, neither did any one else, in respect to anything that occurred while he was thus stranded.

Plaintiff introduced the depositions of Dr. Hanna. Among other things he testified that deceased told him that he "gave out of gas on the road; that he had just bought his car and was afraid that some one would steal it so he remained in it for several days in very severe weather." This is corroborated by the proofs of death submitted by plaintiff to defendant. Nothing else is shown to explain his continued presence in the car in such weather, nor the character of the surrounding country or road, the distance from a town or settlement.

■ From this it appears that he voluntarily remained in the car because he wanted to protect it, notwithstanding it was very cold, and to the extent that his feet froze. Whether such declaration to the doctor would be legal evidence against plaintiff, if offered by defendant, is not the question. Since plaintiff introduced it, we must accord it full credit as proof of the facts thus declared to the doctor.

■ We think it is very well settled that freezing is not of itself an accident, but becomes so only when "joined with a fortuitous unusual, unexpected circumstance or event," which operating upon the cold weather as a condition produces the result as a proximate consequence of such fortuitous circumstances. Freezing is then the result of "external violent and accidental means," but not so unless thus caused. This is illustrated in the following cases: In Fed. Life Ins. Co. v. White (Tex. Civ. App.) 23 S.W.(2d) 832, the insured started in his car, in a temperature ten or fifteen degrees below zero; after fifteen miles his car became disabled, and he abandoned it and started out afoot; after proceeding about two miles he was overcome by exposure and sank down in a snow bank; the following day he was picked up and died. It was said that the question depended upon whether the accidental disability of the car proximately caused him to sustain the exposure and die, and, if so, his death was caused by external violent and accidental means within the terms of an accident insurance policy.

In Ashley v. Agricultural Life Ins. Co., 241 Mich. 441, 217 N. W. 27, 58 A. L. R. 1208, insured became lost on a hunting trip and died from exposure. It was held that the circumstance of the accidental loss of his course amounted to an external violent and accidental cause of his death within such a policy.

In N. W. Com. Travelers Ass'n v. London Guarantee & A. 10 Manitoba L. R. 537 (see 8

A. L. R. 231, 232, note), a commercial traveler met his death from exposure, and it was said that whether it was covered by such a policy depended upon whether it was in consequence of his voluntary exposure to obvious or unnecessary danger. While returning from a trip, the wagon broke down; the weather turned colder; he started out to walk the eight miles ahead; he was too numb to ride one of the horses; the driver rode one on to secure assistance; a rescuing party which the driver obtained were lost; insured was found the next morning frozen to death. He was sufficiently clad for ordinary cold. There was no evidence of suicidal intent as emphasized by the court; and he could not be charged with voluntarily exposing himself to obvious or unnecessary danger. It was held to be an accidental death as covered by such policies.

In Continental Casualty Co. v. Hardenbergh, 121 Miss. 1, 83 So. 278, 8 A. L. R. 229, insured went duck hunting in the marshy swamp of a hunting club. The lodge keeper promised to meet him at 5 o'clock that afternoon. It was cold, ten degrees above zero. Insured did not appear when the lodge keeper went for him; search was made that night, but he was not found. The next morning the searching party was led to his dead body by the keeper's dog that had been with him on the hunt. His body was frozen, one leg sunk in a hole, and the water around him was frozen. *The dog had slept on his chest, as the* indications showed. The policy contained a clause that if death was caused from "freezing sustained by the insured while not engaged in his occupation" one-eighth of the principal would be payable. It was simply a question of enforcing the plain terms of the policy, but it did not hold that his death was not the result of "external, violent and accidental means."

Emphasis is made in some cases upon the fact that it is not alone sufficient that there be an accidental death (that is, one which takes place without foresight or expectation), but that it must be the result of an external cause which is itself accidental (that is, also without foresight or expectation). So that one who voluntarily started out in a snow storm on foot in very cold weather for a five-mile trip, and later was found dead on the trip *without any indication* of the cause of it other than the cold; and since there was no evidence of an accident which intervened to cause the death, or to show that it did not result from a voluntary exposure to the snow storm and cold weather, it did not appear to have resulted from accidental means. Tuttle v. Pac. Mut. Life Ins. Co., 58 Mont. 121, 190 P. 993, 16 A. L. R. 601; Rock v. Travelers' Ins. Co., 172 Cal. 462, 156 P. 1029, L. R. A. 1916E, 1196; Olinsky v. Railway Mail Ass'n, 182 Cal. 669, 189 P. 835, 14 A. L. R. 784, note 788.

Voluntary exposure to unnecessary danger involves the idea of "intentionally doing some act which reasonable and ordinary prudence would pronounce dangerous." Equitable Acc't. Ins. Co. v. Osborn, 90 Ala. 201, 9 So. 869, 870, 13 L. R. A. 267.

In a suit on such a policy, plaintiff has the burden of proving that the death of insured "resulted from bodily injury * * * solely through external violent and accidental means." In sustaining such burden, when it is shown that death by unexplained external, violent means is established, prima facie proof is thereby made of the fact that the injuries were accidental, as the law will not presume that the injuries were intentionally inflicted by deceased. Protective Life Ins. Co. v. Swink, 222 Ala. 496, 132 So. 728; Mutual Life Ins. Co. v. Maddox, 221 Ala. 292, 128 So. 383; Stanton v. Travelers' Ins. Co., 83 Conn. 708, 78 A. 317, 34 L. R. A. (N. S.) 445; Wilkinson v. Ætna L. Ins. Co., 240 Ill. 205, 88 N. E. 550, 25 L. R. A. (N. S.) 1256, 130 Am. St. Rep. 269; Allen v. Travelers' Protective Ass'n, 163 Iowa, 217, 143 N. W. 574, 48 L. R. A. (N. S.) 600; Roeh v. Business Men's Protective Ass'n, 164 Iowa, 199, 145 N. W. 479, 51 L. R. A. (N. S.) 221, Ann. Cas. 1915C, 813; Ætna Life Ins. Co. v. Milward, 118 Ky. 716, 82 S. W. 364, 68 L. R. A. 285, 4 Ann. Cas. 1092; Bohaker v. Travelers' Ins. Co., 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 543; Smith v. Travelers' Ins. Co., 219 Mass. 147, 106 N. E. 607, L. R. A. 1915B, 872.

But after all, the result is usually one of a reasonable inference from all the circumstances. If they sustain a finding of voluntary exposure to an unnecessary danger, the presumption does not operate to a different conclusion, though it may aid in respect to such finding.

While this presumption is said to be more than administrative such as is treated as a rule of procedure, but is a substantial right somewhat in the "nature of evidence" and persists throughout the trial until the evidence reasonably satisfies the jury to the contrary, we have pointed out that it was not such evidence as to create a conflict in what is otherwise undisputed; and that, when there is such undisputed evidence to the contrary, it does not operate to prevent the affirmative charge. This theory was fully explained in our case of Mutual Life Ins. Co. v. Maddox, supra.

This evidence of the declaration of the insured shows without a contrary inference, and there is none other in the evidence, that he voluntarily remained in his car for several days, knowing that it was very cold, and extending even to the point of freezing his feet, not because he could not find his way to relief, nor for any reason except his purpose to protect his car to the extent that he thereby exposed himself to such great personal

discomfiture and danger. He chose rather to protect his car from theft than his person from freezing, and, in doing so, he must have acted voluntarily. The circumstance of his car becoming disabled or the exhaustion of his gas, while fortuitous and accidental, was only a condition upon which his voluntary choice of conduct operated. The latter then became the proximate cause on which the accident ceases to operate, and it becomes remote, and therefore cannot be called the accidental means, though external and violent, which produced his physical injuries.

There was only one count of the complaint. It alleged that insured's injuries were "effected directly and exclusively of all other causes through external, violent and accidental means." Under it plaintiff could not recover unless the injuries were effected as there alleged, and could recover nothing under the clause which allowed one-fourth when they were due to voluntary exposure. The several clauses in the policy were evidently constructed in the light of the principles we have discussed; that is, that an injury is not produced by external violent and accidental means, if it is due to voluntary exposure.

Since there was no claim of that sort in the complaint, charge 1–A had no place in the trial, neither did that feature of the court's oral charge based upon that provision of the policy. But since the jury found for the plaintiff for the full amount of the principal, they found that the injuries were produced by external violent and accidental means. In doing so, and in submitting that issue to the jury, we think the true legal effect of the evidence of the statements of the insured to the doctor showing that he voluntarily submitted himself to exposure was not taken into account as applicable to the question.

We are therefore of the opinion that the affirmative charge should have been given defendant, as requested.

The other assignments of error need not be considered, as they need not appear as here presented on another trial.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.