63 So.2d 603

**EMERGENCY AID INS. CO., Inc. v. CONNELL.**

5 Div. 551.

Supreme Court of Alabama.

Jan. 19, 1952.

Rehearing Denied March 19, 1953.

A. B. Foshee, Omar L. Reynolds and Reynolds & Reynolds, all of Clanton, for appellee.

Lawrence F. Gerald, Jr., Clanton, and J. C. Fleming, Elba, for appellant.

FOSTER, Justice.

This is a suit by appellee against appellant on an accident insurance policy for a bodily injury which appellee sustained on June 7, 1948. It is admitted that the policy was in force at that time.

The policy contained the usual general provision of coverage, using the standard phrase as for bodily injury sustained "solely through accidental means," and contains a provision that the injury shall "result directly and independently of all other causes" from the accident, with a special provision containing the following clause, "injuries, fatal or otherwise, loss or disability caused wholly or in part, directly or indirectly, by disease not caused solely by bodily injury covered hereunder are not covered by this policy".

. The issue in this case, and the only one as to which there is alleged to have been error, hinges around the interpretation and application of the special clause above quoted.

Appellant insists that on the evidence submitted it was entitled to the affirmative charge, and that is substantially the only question presented on the appeal.

Appellee was injured, as shown by the uncontradicted evidence, on June 7, 1948, while he was employed as a sawyer at a sawmill, and while he was so engaged a piece of timber, being a 4" x 4", fell against his right ankle and produced an abrasion about the size of a thumb nail. He was treated by Dr. Moore, and finally was carried to Dr. Skinner's clinic in Selma, where Dr. Skinner assisted by Dr. Herman amputated his right leg above the knee. Previously, in 1935, appellee suffered an injury to his right leg when it was broken between the knee and ankle. His leg became infected, did not heal properly, would swell periodically and drain corruption several times a year from the time of the injury until 1943. At that time he was confined in the federal penitentiary at Tallahassee, Florida, and an operation was performed on that leg. The leg was opened and the bone scraped and pieces of broken bone taken out: the wound was then dressed, and in the course of a reasonable time it healed. Thereafter he was able to use it with as much ease and comfort as he could the other leg. To all outward appearances, and so far as his use of it was concerned, it was in as good condition as ever, except that it was slightly shorter in length, causing an inconsiderable limp. This condition continued throughout another penitentiary service for the same charge in Alabama. He was discharged from the State penitentiary in 1946, and for two years pursued his occupation as a sawyer where it was necessary to use his leg in very active work requiring considerable strain,—all of which was done without any pain or inconvenience resulting. At the time of the injury in June 1948, and for several years before, the leg had shown no inflammatory condition or the presence of pus, nor difference in any respect with the other leg. Dr. Moore testified as a witness that when appellee came to him for treatment there was inflammation of the tissue of the leg, a swelling and redness of the tissue, resulting from what is commonly known as cellulitis. (This was several days after the accident.) That he saw a scar on the leg, but did not notice any discharge from that scar; that the whole right leg was red and swollen, and that he treated appellee for some weeks or months by dressing the leg and giving him injections of penicillin, as he recalled, but could not be positive about the penicillin. Dr. Moore was then asked to define osteomyelitis, which he said is an infection of the bone marrow, or the soft portion inside the bone which becomes infected by getting pus in it in some way usually from the blood stream or from an injury. He gave as his opinion that appellee was so affected at that time, and that amputation would not have been necessary if such condition had not existed: but that the condition of his leg did not necessarily mean that he would lose his leg, and that sometimes people live some fifty or sixty years with that condition using the leg all the time. The only other expert testimony was that of a showing made for Dr. Herman, who assisted Dr. Skinner of Selma in amputating the leg. We quote the material part of that showing as follows: "His history relates that he fractured his right tibia and fibula in 1935 while unloading a drum of gas in his yard. He had chronic osteomyelitis of the right tibia resulting from this accident and his leg drained off and on thereafter." The statement then recited that on October 5, 1948, Dr. Skinner amputated the lower third of appellee's right femur. The doctor expressed the opinion that treatment other than amputation was a waste of time due to the long standing disability. It does not seem to be necessary to refer to other features of the testimony.

The question for consideration is whether or not the testimony to which we have referred, is sufficient to carry the case to the jury for them to determine whether or not the condition of appellee up to the time of his injury in June 1948 was a disease within the meaning of the special clause of the policy, and whether or not appellee's injury and his disability were caused wholly or in part directly or indirectly by that disease then already existing.

Clauses of this kind have been considered by the courts of a great many states with a difference of opinion in respect to their meaning and application. The case which is cited by most of the authorities and extracts quoted from it extensively, is that of Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914. The opinion in that case was written by Chief Justice Cardozo, then on the New York Court of Appeals.

This Court adopted extracts from that opinion and gave effect to them in the case of First National Bank v. Equitable Assurance Society, 225 Ala. 586, 144 So. 451. In doing so, we referred to two former cases of this Court, to wit, Standard Accident Ins. Co. v. Hoehn, 215 Ala. 109, 110 So. 7, and Benefit Association of Railway Employees v. Armbruster, 217 Ala. 282, 116 So. 164; Id., 224 Ala. 302, 140 So. 356. In referring to those cases this Court observed that the policies which they were construing did not contain the special clause, to which we have referred, but only had a general clause in them, in substance that it should not apply unless death (or injury) resulted directly and solely from an accidental injury exclusive and independent of all other causes, and noted that a number of states made no distinction between policies which had such general clause and those which also had a special clause similar to that here involved. In the Equitable Assurance Society case, supra [225 Ala. 586, 144 So. 453], the court was dealing with a policy which had a special clause providing for an absence of coverage where death results "directly or indirectly from disease or bodily infirmity".

It is to be noted, though not of much importance here, that the special clause in the instant case does not have the words "bodily infirmity," but does contain the word "disease" in that connection. In the Equitable Assurance Society case this Court declined to follow those courts which made no distinction between the general and special clauses referred to, as it had indicated should be done in the Hoehn and Armbruster cases, supra, which

were not directly in point on that question. The quotations in the Equitable Assurance Society case, taken from Silverstein v. Metropolitan Life Ins. Co., supra, have been used as a basis for textwriters and opinions of courts ever since, and particularly with reference to what is material in the instant case.

We note that in Bergeron v. Prudential Ins. Co. of Am., 96 N.H. 304, 75 A.2d 709, 711, it is well said that in order for a condition to be a disease or bodily infirmity within the meaning of such a special clause, there must be "some ailment or disorder of an established or settled character to which the insured is subject, an ailment or disorder which materially impairs, weakens, or undermines the condition of the insured and is so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. These words do not include a mere frail general condition so that the powers of resistence are easily overcome, a tendency to disease, a temporary weakness nor a normal physical change that inevitably accompanies advancing years." (This is paraphrasing and using some of the words of the Silverstein case, supra. Compare, New York Life Ins. Co. v. Wilson, 9 Cir., 178 F.2d 534.

■ In our Equitable Assurance Society case, supra, it was stated that the result of a comparative study of the cases and authorities throughout the country is that the *disease* to be controlling under such a clause must be such as that it was an *efficient cause* of the injury or death (death in that case), and also that disease does not mean "mere feebleness, nor predisposition to recurrence of former disease, nor every infirmity which may aggravate the effects of an accidental injury". But in that case this Court also said that the condition was so apparently an efficient cause of the injury as to be so held as a matter of law, leaving no question for the jury. See, also, Adkins v. Metropolitan Life Ins. Co., 235 Ala. 417, 179 So. 382, where there was a like holding when the victim had "Addison's disease," —a fatal disease.

524

A complete analysis of the law applicable to that situation substantially as we have stated, is found in 45 C.J.S. Insurance, § 776, pp. 810–813.

■ We call attention to the evidence in the instant case that for approximately four years next preceding the accident, appellee suffered no inconvenience or pain from the condition of his leg bone, using it normally all that time without any drain from it or other indication of inflammation, and would probably never have had any serious trouble resulting from it except possibly from an accident such as happened in June 1948. We are not willing to say as a matter of law that the condition of his leg was an efficient cause of the injury or disability which he suffered, although it may have aggravated it. It had no relation whatsoever to bringing about the accident itself. The jury could find that it was only a condition upon which the accident in June 1948 operated, although the serious results of that accident were aggravated by it.

It is our view, therefore, that there was no reversible error in refusing the charges requested by the defendant,—all of which were virtually the same in legal effect.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.