70 So.2d 817

### JOHN HANCOCK MUT. LIFE INS. CO.

### v.

### McCREARY.

### 3 Div. 964.

Court of Appeals of Alabama.

March 3, 1954.

Steiner, Crum & Baker, J. W. Patton, Sam Rice Baker, Montgomery, for appellee.

Rushton, Stakely & Johnston, Montgomery, for appellant.

HARWOOD, Judge.

Suit below was for payments allegedly due under a double indemnity provision in a life insurance contract.

The defendant company, who is the appellant here, had issued a life insurance policy covering the life of Henry S. McCreary. The policy was in the amount of $5,000, with a supplemental provision reading as follows:

"Accidental Death Benefit Provision. 'Upon receipt of due proof of death * * * caused solely by external violent and accidental means of

which there is a visible wound or contusion on the exterior of the body * * * and that such death occurred within ninety days after such injury and as a direct result independently and exclusive of all other causes * * * and provided further that the death of the insured was not caused directly or indirectly by disease or bodily or mental infirmity * * * the company will pay an additional sum of $5,000.' "

The policy issued in 1929, was in full force at the time of Mr. McCreary's death in 1951, and the appellant paid to the beneficiary the $5,000 called for in the face of the policy, but declined to make any payments under double indemnity provision, taking the position that Mr. McCreary's death was caused by Parkinson's disease, and not as a result of an accident.

In the trial below the jury returned a verdict in favor of the plaintiff, appellee here, and judgment was entered pursuant to such verdict.

Appellant's motion for a new trial being overruled, appeal was perfected to this court.

Appellant's assignments of error all relate to two points: 1, that the court erred in denying appellant's request for the general affirmative charge with hypothesis, and 2, the court erred in denying appellant's motion for a new trial on the grounds that the verdict is contrary to the great weight of the evidence, and stated negatively, that the verdict is not sustained by the great weight of the evidence.

We will confine our review to the aspects thus raised by the assignments.

In the trial below the plaintiff's evidence was directed toward showing that Mr. McCreary was 63 years old at the time of his death. For a long number of years prior to his death he had engaged in the wholesale lumber business in Montgomery.

In 1941 Mr. McCreary's health began to fail, and his illness was diagnosed as Parkinson's disease. This disease is incurable, and grows progressively worse.

Mr. McCreary continued his business however, but retired in 1950. For about the last two years prior to his retirement he went to his office only in the mornings.

After his retirement on 1 December 1950 Mr. McCreary largely spent his time around his home. He walked about the house and yard; he had all of his meals at the table; he visited with friends and neighbors and went on frequent automobile trips to Jasper; he read and listened to the radio and was well posted on current events; he welcomed visitors and conversed normally with everyone.

This condition continued until after an automobile accident which necessitated his hospitalization.

On the afternoon of Monday, 24 September 1951, Mr. and Mrs. McCreary left Montgomery by automobile to drive to Jasper to visit relatives. Mrs. McCreary was driving. During the trip it began to rain. A few miles from Birmingham the car began to skid. Mrs. McCreary applied the brakes and the car skidded to the opposite side of the road. An approaching automobile struck it toward the right rear portion and it came to a stop against an embankment.

The blow of the collision sprang the right front door open and Mr. McCreary fell partly out of the automobile. His feet and legs remained in the car, and his head and shoulders rested on the pavement. The nature of his injuries being unknown Mr. McCreary was left in this position for some thirty minutes, and until he was placed in an ambulance summoned from Birmingham.

He was taken to a Birmingham hospital where he was attended by Dr. Gray C. Buck, Jr. He was in great pain during his stay in the hospital.

The next day, at Mrs. McCreary's request, Dr. Gray C. Buck, Jr., consented that Mr. McCreary be moved to Montgomery. He was thereupon, in a litter, and under narcotics, transported by ambulance and train to the Veterans Hospital in Montgomery.

He remained in the Veterans Hospital until his death on 20 November 1951, except for a period of a few days when he was removed to his home to see if he could be cared for there. This arrangement proving unsatisfactory he was re-entered in the Veterans Hospital.

Subsequent to the automobile accident Mr. McCreary was completely bedridden until his death. The appellee's evidence tends to show that almost continuously during this time the insured was semiconscious, and helpless. He had to be fed, and otherwise cared for. Members of his family were unable to get any intelligible response to their efforts to converse with him.

The death certificate issued upon Mr. McCreary's death shows pulmonary emboli as the disease or condition directly causing death, while a thrombosis in the left femoral vein is listed as an antecedent cause. Under other significant conditions is listed Parkinson's syndrome.

Some five doctors testified in this cause. Actually we find little or no real conflict in their testimony.

All testified as to the symptoms and effects of Parkinson's disease, and were in accord that this disease is incurable and progressive, though persons affected with it may live for a long time.

Dr. Gray C. Buck, Jr., a witness for the plaintiff, testified that he had attended Mr. McCreary upon his admission to the Birmingham hospital following the automobile accident. He found lacerations of the scalp and right eyebrow. These wounds were sutured. Mr. McCreary complained of pains in his back and X-rays of his back and chest were made. These disclosed no broken bones. According to Dr. Buck Mr. McCreary "had skinned marks and bruises all over his body," though he made no particular note of the size or locations of these injuries.

Dr. Russell Henry, a witness for the defendant, testified that he performed the autopsy upon Mr. McCreary's body, and made out the death certificate. The contents of this certificate have already been noted. Since it shows the primary cause of death to be a pulmonary embolus, with a thrombus of the left femoral vein being the secondary cause, the sole issue of this case is narrowed to a determination of whether the thrombus was caused by the automobile injuries, or by Parkinson's disease.

Dr. Henry did not find any evidence of a trauma in the area of the thrombus at the time of his autopsy.

The medical witnesses were in agreement that a thrombus, or blood clot, may result from an infection or from a trauma, or from decreased mobility, and if caused by trauma it may not necessarily form immediately. When a thrombus is stationary it is not lethal, but when it moves in whole or in broken off parts into the blood stream as emboli death often results if these moving clots are carried to the lungs, heart, or brain.

The appellant's counsel lays some stress upon a portion of the testimony of Dr. William T. Brannon, a witness for defendant, that Parkinson's disease leads to a vascular accident. When asked to define a vascular accident he stated: "The most usual thing would be a blood clot. They would become bedridden, not being able to move about, and entirely helpless."

However, Drs. Hutchinson, appellee's witness, and Buck, appellant's witness, testified in effect that Parkinson's disease in and of itself did not cause blood clots, but that these came when the disease had advanced to the stage where the patient was rendered immobile by it, and as long as one afflicted with Parkinson's disease was able to move about there was no more danger of his suffering a blood clot than there was in a person not so afflicted.

Viewed in this light we find no conflict in the medical testimony as to the relationship between Parkinson's disease and the formation of blood clots.

Dr. Hutchinson, who had been Mr. McCreary's physician for a number of years further testified that in his opinion Mr. McCreary did not have a thrombus prior

to the automobile accident, and there was not a sufficient decrease in his mobility to have caused one.

Dr. Hutchinson further testified that while it might be said that Parkinson's contributed to Mr. McCreary's death in that a well man ordinarily would not have died of the accident Mr. McCreary suffered, yet the Parkinsonism was not related to the cause of his death, in that had Mr. McCreary not had Parkinson's disease, the pulmonary embolism would have killed him, and the embolism would not have developed without some trigger mechanism causing it to develop.

When an insured suffers an accident independent of and unconnected with a disease from which he is suffering, it is ordinarily a question for the jury to determine, where the evidence is conflicting, whether the accident was the sole proximate cause of the injury or death, even though the effects thereof may have been aggravated by the disease. Liberty National Life Ins. Co. v. Bailey, 34 Ala. App. 199, 38 So.2d 295; Emergency Aid Ins. Co. v. Connell, 258 Ala. 521, 63 So.2d 603; Metropolitan Life Ins. Co. v. Halsey, 230 Ala. 193, 160 So. 248; First Nat. Bank of Birmingham v. Equitable Life Assur. Society of United States, 225 Ala. 586, 144 So. 451.

We are clear to the conclusion that under Dr. Buck's testimony to the effect that the insured had bruises and abrasions over his entire body when he examined him shortly after the accident, and under the additional evidence presented by the plaintiff, the jury could reasonably infer, and were amply justified in so doing, that such bruises and abrasions resulted from the accident, that this accident was the proximate cause of the femoral thrombus with the resulting emboli which directly caused the insured's death. This being so the lower court did not err in refusing appellant's requested affirmative charge, nor in denying its motion for a new trial because of the insufficiency of the evidence to support the verdict.

Affirmed.