83 So.2d 335

EMERGENCY AID INSURANCE CO.

v.

Eurell E. DOBBS.

5 Div. 630.

Supreme Court of Alabama.

Sept. 15, 1955.

Rehearing Denied Nov. 10, 1955.

Omar L. Reynolds, Reynolds & Reynolds, Clanton, for appellee.

J. C. Fleming, Elba, and Glen T. Bashore, Clanton, for appellant.

PER CURIAM.

This suit is predicated upon two policies of insurance issued by appellant to appellee, in which there is a provision for liability for the loss of the sight of one or both eyes resulting from an injury caused by external, violent and accidental means, occurring within three months after the accident. The policies contained the same terms. Clause 4 is in the following language: "No action at law or in equity shall be brought or maintained on any claim arising under this policy * * * until after the expiration of ninety (90) days from the completion and filing of proofs of such claim on the forms provided by the company".

The complaint did not set out the policy in full and did not refer to the existence of such a clause, but alleged notice to defendant of the loss claimed. The plea was in short by consent with leave to give in evidence any matter which if well pleaded would be admissible in defense.

Appellant on this appeal contends that the plea put in issue the failure to furnish the proofs as required by the policy; that there was no such evidence, and, therefore, the affirmative charge should have been given as requested.

Appellee (plaintiff) contends that such an issue must be raised by a plea in abatement verified as required by law. This was not done; and, further, plaintiff's counsel stated in the beginning of the trial that it was agreed that notice and proof of loss were duly given in accordance with the policy. Defendant's counsel answered in response to that statement by plaintiff's counsel: "And refused because the evidence did not show an accidental injury to his eyes". That attorney is no longer of counsel, being now a judge and not engaged in practice. The other counsel who engaged in that trial are here making the point that due proof was not made.

The principle seems to be established that when the policy makes a *right* of recovery (or liability) conditioned upon making the proof, a special plea in abatement is not necessary. Life Ins. Co. of Virginia v. Hanback, 250 Ala. 643, 35 So.2d 696; Metropolitan Life Ins. Co. v. Phillips, 236 Ala. 259, 182 So. 35; New York Life

598

Ins. Co. v. Sinquefield, 231 Ala. 185, 163 So. 812.

But when the time of *payment* is controlled by proof being made, failure to make the proof in due time merely postpones the time of payment and a plea in abatement is necessary if suit is brought before the time stipulated. Vardaman v. Benefit Ass'n of Ry. Employees, Ala., 82 So.2d 272;[1] Metropolitan Life Ins. Co. v. Phillips, 236 Ala. 259, 182 So. 35; Westchester Fire Ins. Co. of New York v. Green, 223 Ala. 121 (15), 134 So. 881; Home Ins. Co. of New York v. Murphy, 223 Ala. 566(2), 137 So. 393; Prudential Ins. Co. v. Gray, 230 Ala. 1, 159 So. 265; Prudential Ins. Co. v. Calvin, 227 Ala. 146(1) 148 So. 837.

A plea in short by consent, such as here interposed, permits proof of any defensive matter except as required by law to be interposed in a verified special plea. Johnston v. Isley, 240 Ala. 217, 198 So. 348.

We are of the opinion that under the terms of the instant policy proof of disability is not made a condition to the obligation to pay the disability benefits, and therefore a special plea in abatement, duly sworn to, was necessary to present that issue. But if we assume, as appellee contends, that the plea in short put that in issue, the record shows that it was agreed that such proof was duly furnished. Presumably this was a verbal agreement since it was not shown that it was in writing.

Appellant does not in terms insist upon the invalidity of the agreement because it was not in writing; but seems to assume that to be true. Although counsel for appellant do not refer in brief to section 46, Title 46, Code, they doubtless rely upon its effect. That statute gives an attorney power to bind his client by an agreement only when it is in writing or by an entry on the minutes of the court. But when attorneys verbally agree in the beginning of a trial or during its progress, and the court reporter takes it down as a part of the proceedings, we will not say at this time whether that complies with section 46, supra. But in this case at the outset and as a part of the trial Mr. Reynolds, attorney for plaintiff, announced that it is agreed among other things that "notice and proof of loss of said alleged accidental injury was duly given to the defendant in accordance with said policy", to which Mr. Atkinson, attorney for defendant, replied: "And refused because the evidence did not show an accidental injury to his eyes". That was in substance the introduction in evidence of an agreement which had been made. If defendant had objection to it because not in writing, he should have so stated.

The merits of this suit are determined by the question of whether the loss of plaintiff's eyesight was due to "external, violent and accidental means" or to disease otherwise caused. There was a judgment for plaintiff on the verdict of the jury, and defendant appeals.

Plaintiff's evidence tended to show, besides formal allegations, that he was a carpenter by trade and had no trouble with his eyesight prior to May 8, 1951. That on two occasions in the fall of 1950 his eyes were subjected to a blow torch used in welding. That both incidents hurt his eyes, but he recovered without consulting a doctor, and was in good condition on May 8, 1951. It was on that day that plaintiff claims he sustained an injury to his eyes by external, violent and accidental means, which caused him to lose the use of both eyes. His evidence was that on that day, around eleven o'clock in the morning, he was engaged in his work as a carpenter on a building in Cullman, Alabama; that he was carrying steel window frames up a ramp which was about four feet in width and estimated to be forty feet in length, and he was wearing no shield or hood over his eyes, and as he walked along this walkway he noticed sparks dropping and *looked up to see where they were coming from* and his eyes received a flash from an electric torch which an employee was holding outside the building and the flash came under a steel beam, his eyes being within four feet of the torch.

1. Ante, p. 236.

He continued to work until about three o'clock. During that time there would be a flare of brightness and then it would gradually get dark. This was on Tuesday. He went to the hospital at Cullman the next morning where he remained Wednesday and Thursday, when he left the hospital and went to his home in Clanton where he was treated by a doctor, but was not able to see well. That later he went to a hospital in Birmingham, and while there his eyes grew worse—to the condition in which they have been since that time; and that he now has no more than one percent vision in either eye.

■ Appellant's counsel insists that the affirmative charge was due to be given as requested because he claims that the evidence, on which plaintiff relies to prove his injury, shows without conflicting influence that the injury to his eyes, as claimed, was not caused by *accidental* means. He points out that the evidence shows that neither the plaintiff nor the torch bearer did an accidental act, but all parties intentionally did the act which was responsible for the injury. Plaintiff looked at the torch voluntarily. The torch bearer voluntarily placed it where it was when plaintiff looked at it. There is a distinction between an accidental death or injury, and one caused by accidental means. Such a distinction is treated by the law writers. It is an accidental death or injury if the result is an accident whether or not due to accidental means; but it is caused by accidental means, although the means employed were voluntarily rendered, if, in the act preceding the injury, something unforeseen, unusual and unexpected occurs which produces the result. Pledger v. Business Men's Accident Ass'n, Tex. Com.App., 228 S.W. 110; 45 C.J.S., Insurance, § 753, p. 778.

The principle is thus expressed in our case of Inter-Ocean Casualty Co. v. Jordan, 227 Ala. 383, 150 So. 147, 148: "When the voluntary act of the insured caused the injury, by way of, and as the result of, unanticipated and unexpected circumstances and result, it is within the terms of the contract". In that case the Court was considering a clause in a policy insuring against "'bodily injury sustained *solely* through external, violent and accidental means'".

■ If the insured voluntarily does an act which he knows is likely to produce injury, and injury proximately results, it was held not to have occurred by accidental means. Inter-Ocean Casualty Co. v. Foster, 226 Ala. 348, 147 So. 127. And in Equitable Accident Ins. Co. v. Osborn, 90 Ala. 201, 9 So. 869, 870, 13 L.R.A. 267, the Court quotes from other authorities holding in substance that a voluntary injury is "'intentionally doing some act which reasonable and ordinary prudence would pronounce dangerous'".

■ That plaintiff looked up to see where the sparks were coming from when he received the flash from the blow torch is the only voluntary act here chargeable to him. The jury could find that plaintiff in doing so did not voluntarily expose his unprotected eyes to the flash of a blow torch which he knew would be dangerous in the ordinary course of events. We think that such contention is not sufficient to require a reversal for the refusal to give the affirmative charge.

■ It is insisted that the verdict of the jury was contrary to the great weight of the evidence, in that, it conclusively shows that plaintiff's blindness was caused by a disease of the eye called glaucoma which was not produced by an external cause. "Glaucoma" is defined by Webster's New International Dictionary as "a diseased condition of the eye marked by a hard inelastic condition of the eyeball, a bluish tinge of the optic disk, and excavation in the head of the optic nerve". It is not defined by the specialists who testified. We therefore accept Webster's definition as authentic.

Dr. Callahan testified that glaucoma causes neither pain nor redness of the eye, and many persons lose their vision because of it without knowing they have it. He examined plaintiff on July 5, 1951, and testi-

fied that plaintiff had "bilateral optic atrophy as a result of glaucoma", which is never caused by an accident; that torch radiation affects only the front surface of the eye, and does not affect the vision; and could not cause blindness without leaving scars on the front surface of the eye; that the front surface of plaintiff's eyes were clear and his blindness was due to the dying of his sight nerves in the back of his eyes an inch away from the front surface. "Such aggravation (torch burns of the eye) would only be temporary and would not cause any permanent blindness", and *did not hasten the blindness of plaintiff*.

Dr. Charles A. Thigpen testified that he examined plaintiff's eyes on May 13, 1953. His testimony corroborated that of Dr. Callahan.

Dr. Truett Jackson examined plaintiff's eyes on August 19, 1954. His testimony, material at this point, is epitomized by himself as follows: "I found him affected with optic atrophy which was due to some inflammation or irritation of the optic nerve. The cause is not able to be determined at this time. There is no physical or laboratory way to ascertain the cause now, just the evidence of the damage that has been done. * * * I did not find at the time I examined the patient any evidence of glaucoma. * * * From the history of the patient and the physical findings at present, my impression is again optic atrophy, bilateral, resulting from an optic neuritis. The cause of the optic neuritis is not evident. From the history of the patient and the type of burns that an electric arc can inflict, *it is entirely possible that the onset of blindness or partial blindness was hastened by the exposure to the electric arc."* And he further testified: "There is no known connection to me of exposure to an electric arc and glaucoma. *Exposure to an electric arc is enough to aggravate most any eye condition and may have hastened the onset of his partial blindness."* (Italics supplied.)

■ The evidence showed the qualifications of all three eye specialists. Accord-

ing to Dr. Truett Jackson, who examined plaintiff about three years after the injury, if plaintiff had glaucoma, which was not then apparent to him, the flash of the torch operating on it could have *hastened the onset of blindness*. That, in connection with plaintiff's testimony, would justify the jury in finding that it did hasten the blindness. Glaucoma might not have been apparent three years after the injury, when it was apparent as much as two years afterwards when Dr. Thigpen examined him, or a few weeks thereafter when Dr. Callahan examined him.

■ So we come to the question of whether blindness following accidental injury to the eye not sufficient to produce blindness, was caused by accidental means because the accident operated upon a diseased condition of the eye and by so doing *hastened the onset of blindness,* which would have occurred in the ordinary course of events without the accident. Our cases sustain the view that blindness, when so accelerated, is the result of accidental means (and the accident was external and violent). Benefit Ass'n of Railway Employees v. Armbruster, 224 Ala. 302, 140 So. 356; id., 217 Ala. 282, 116 So. 164; John Hancock Mutual Life Ins. Co. v. McCreary, 37 Ala.App. 493, 70 So.2d 817; 45 C.J.S., Insurance, § 776, p. 813, note 58.

■ We do not have for consideration a clause which excludes recovery if the result was partially caused by disease. The liability fixed by the policy is when the insured "shall suffer an injury caused by external, violent and accidental means, that results within three months of occurrence of such accident, * * * the irrevocable loss of sight of one or both eyes". It does not require the accidental means shall be the sole cause of such loss of sight as in Emergency Aid Ins. Co. v. Connell, 258 Ala. 521, 63 So.2d 603.

The judgment of the circuit court should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this

Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.

On Application for Rehearing.

PER CURIAM.

 Counsel for appellant disclaim any contention that the agreement as to proof of loss was inoperative because not in writing. But they claim that what they said in response to the statement of plaintiff's counsel about the agreement shows that it was not "wholeheartedly" accepted by them, but with a qualification which affected it. We have stated heretofore in this opinion what the record shows in that respect. Whether thereby defendant's counsel meant to say that the proof was refused, or that payment was refused "because the evidence did not show an accidental injury to his eyes" is not material. It was admitted that "proof of loss was given in accordance with the policy". When so, defendant's refusal to accept such proof or to pay for the loss does not in any respect militate against the agreement as proof of a compliance with the policy in that respect. When that "was given in accordance with the policy," plaintiff showed a compliance with the policy requirements, whether it is refused or not.

We have again considered the other contentions on this application, but find no cause to modify our judgment of affirmance. With a modification of the opinion as indicated, the application for rehearing should be overruled.

Opinion modified as indicated: application overruled.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.