532

226 So.2d 315

**INDEPENDENT LIFE AND ACCIDENT INSURANCE COMPANY OF JACKSON-VILLE, FLORIDA, a Corporation,**

v.

**Sam MADDOX.**

**6 Div. 352.**

Supreme Court of Alabama.

Sept. 4, 1969.

London, Yancey, Clark & Allen and Thos. R. Elliott, Jr., Birmingham, for appellant.

Jenkins, Cole, Callaway & Vance, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

This is an appeal from a judgment of the Circuit Court of Jefferson County, Alabama, setting aside a judgment for the defendant, Independent Life and Accident Insurance Company, Jacksonville, Florida.

The suit was on a policy of insurance issued by the appellant, defendant below, for the loss of a leg by appellee, plaintiff below.

The cause was tried in the Jefferson County Civil Court, resulting in a judgment for the plaintiff. Defendant appealed to the Circuit Court of Jefferson County. There, the cause was tried to a jury and a verdict was returned for the defendant. That court granted plaintiff's motion for a new trial, and defendant duly excepted thereto. A timely appeal was taken by defendant to this Court.

The facts, in substance, are that the plaintiff, in the latter part of November, 1963, slipped and fell into a creek while acting within the line and scope of his employment. A stick struck and bruised the back of plaintiff's left knee as he fell. No previous difficulties had been experienced by plaintiff with his left leg. Three or four days later, pneumonia developed and plaintiff was taken to a hospital on December 1, 1963. He was treated on an outpatient basis and sent home. He continued to suffer from pneumonia and, on December 5, 1963, returned to the hospital, was again treated on an out-patient basis and released.

Plaintiff testified that prior to receiving the blow by the stick when he fell, no pain had been experienced in the left leg. Thereafter, however, the pain had been constant and had gradually increased until the leg was amputated on December 13, 1963. A neighbor of the plaintiff, summoned to the home of the plaintiff, testified that when he saw plaintiff's leg after the accident it appeared black and swollen.

A physician testified that he first saw appellee in the emergency room of a hospital on December 8, 1963, at which time appellee was complaining of sharp pains in the left foot and leg which had begun some sixteen hours earlier. The foot and leg had become cold and mottled. There was no pulse in the left foot, which implied insufficient blood supply and arterial blockage in the left leg.

A series of tests indicated that appellee had arteriosclerosis, a condition that progresses gradually, and beginning in early life in many of those afflicted with same. Changes occur in the blood vessels in the form of the thickening and calcification of the artery walls. These irregularities in the walls of the arteries are known as plaques. The condition is called arteriosclerosis, but is commonly referred to as "hardening of the arteries."

On December 8, 1963, five days prior to the amputation of appellee's leg, exploratory surgery was performed. The operation revealed a block or clot which resulted from a tear in the lining of the blood vessel associated with a plaque or hardening of the artery. It was brought out on cross-examination that such a tear may result from trauma or turbulence of blood around a plaque.

The damage to appellee's leg was caused by the onset of gangrene, which in turn was brought about by an inadequate blood supply to the involved area. A clot which formed as a result of the tear in the lining of the blood vessel in appellee's leg obstructed the normal and necessary circulation of blood to that area, thereby giving rise to the gangrenous condition.

The attending physician's opinion, as stated in his testimony, was that the leg amputation resulted from arteriosclerosis and associated problems. On cross-examination, however, this physician stated that a tear such as was discovered in appellee's blood vessel could have occurred as the result of a blow, or, once occurring from a blow, could have been increased in size as a result of the flow of blood around the tear. In his opinion, however, there was no sign of a recent blow when the operation of December 8, 1963, was performed.

There are fourteen assignments of error on this appeal, all of which pertain to the action of the trial court in granting appel-lee's motion for a new trial. Assignment of error No. 1 relates to the granting of appellee's motion for a new trial, and assignments of error No. 2 through No. 14 relate to the action of the trial court in granting appellee's motion for a new trial based on individual grounds assigned in the motion for a new trial, with each assignment of error directed to an individual ground.

In his brief, appellant's argument begins with the designation, "All Assignments of Error," and asserts that the trial court's action in granting appellee's motion for a new trial was error to reverse, for the reason that the defendant insurance company was due the affirmative charge.

The appellant in this case was not due the affirmative charge. Where the evidence is conflicting as to whether an accident was the cause of an insured's death, or disability, or whether an accident and a disease cooperating therewith combined to cause death, or disability, then ordinarily a question of fact within the resolution of the trier of fact is presented. Liberty National Life Insurance Co. v. Reid, 276 Ala. 25, 158 So.2d 667; John Hancock Mut. Life Ins. Co. v. McCreary, 37 Ala.App. 493, 70 So.2d 817.

Appellant's first assignment of error asserts that the trial court erred in granting appellee's motion for a new trial. Appellant adopts the argument advanced for assignments of error No. 2 through No. 14 as his argument for this assignment of error.

Assignments of error No. 2 through No. 14 claim error on the part of the trial court in granting appellee's motion for a new trial based on the trial court's action in giving various of defendant's requested written charges.

The entire basis of appellant's argument is the assigned error of the trial court in granting appellee's motion for a new trial. The judgment of the lower court does not

specify on what ground the motion for a new trial was granted; it does, however, specify that said motion was not granted on grounds 1 and 2 of the motion, which are, respectively, verdict contrary to law and evidence and verdict not sustained by the great preponderance of the evidence. What was said in Cooper v. Grubbs, 262 Ala. 519, 80 So.2d 284, is controlling in our review of the instant case:

"This court has held that the action of the trial court in granting the motion for a new trial will not be disturbed. if any ground of the motion was well taken. Louisville & Nashville R. Co. v. Scott, 232 Ala. 284, 167 So. 572; Gissendanner v. Temples, 232 Ala. 608, 169 So. 231." Id., at 520, 80 So.2d at 285.

Without waiving the other grounds assigned in the motion for a new trial, appellee relies primarily upon the error of the trial court in giving appellant's requested charges numbered 9, 14 and 15, said charges being the subject of grounds 5, 6 and 16, respectively, of the appellee's motion for a new trial. Those charges are as follows:

"9. I charge you, gentlemen of the jury, that the word 'solely' as used in the policy in this case means singly, alone, exclusively, without another or to the exclusion of all other and I further charge you that the plaintiff must reasonably satisfy you from the evidence that he sustained the loss of his foot singly, alone, exclusively, without another or to the exclusion of all other causes except those produced as a result of an accident through violent and accidental means and unless you are so reasonably satisfied from the evidence then you cannot find your verdict in favor of the plaintiff and against the defendant.

"14. I charge you, gentlemen of the jury, that if you are reasonably satisfied from the evidence in this case that plaintiff lost his leg wholly or in part as a result

of some condition not caused by an accident, then such loss of leg would not be 'solely' through external, violent and accidental means and you would not be entitled to find your verdict in favor of the plaintiff and against the defendant.

"15. I charge you, gentlemen of the jury, that if you are reasonably satisfied from the evidence in this case that the plaintiff lost his leg partly as a result of an accident, then such loss would not be 'solely' as a result of an accident through external, violent and accidental means and you would not be entitled to find your verdict in favor of the plaintiff and against the defendant."

All of these charges relate to the legal effect of the clause " *  *  * *solely* as a result of an accident through external, violent and accidental means  *  * * *" (Emphasis added), which appears in the so-called "general clause" in the policy in suit. The charges have nothing whatsoever to do with the so-called "exception clause" for "bodily infirmity or disease." Those clauses, extracted from the policy, are as follows:

"BENEFIT FOR LOSS OF CERTAIN MEMBERS OF THE BODY:

*       *       *       *       *       *

Upon receipt during the lifetime of the Insured of due proof that while this policy is in force, the Insured has suffered any of the losses specified in the following table solely as a result of an accident through external, violent and accidental means after the effective date of this policy and provided such loss occurs within ninety days after such accident, the Company will pay, subject to the exceptions hereinafter enumerated, to the Insured the amount set opposite such loss as follows:

*       *       *       *       *       *

536

LOSS OF ONE FOOT—ONE HALF OF THE PRINCIPAL SUM.

\* \* \* \* \* \*

EXCEPTIONS

The Agreement as to the benefit under this Policy shall be null and void if the Insured's death or injury results, directly or indirectly, from any of the following causes:

\* \* \* \* \* \*

6. Bodily or mental infirmity, or disease, or medical or surgical treatment therefor:

\* \* \* \* \* \*

We are in agreement with appellee that the above stated charges misstate the legal effect of the term "solely," as that term has been construed by the courts of this state. In Gay v. Pacific Mutual Life Insurance Company, 237 F.2d 448, that which we deem to be the proper construction is set forth:

"In Alabama, the phrase 'solely through external, violent and accidental means' has been construed 'to mean that the *accident shall be the proximate cause of death and not exclusive of other conditions, means or circumstances.'*" Citing Benefit Ass'n of Ry. Employees v. Armbruster, 217 Ala. 282, 116 So. 164, 166. (Emphasis added) Id., at 450.

The law applicable where a "general clause" and an "exception clause" exist in an insurance policy was clearly set out in the recent case of Liberty National Life Insurance Company v. Reid, 276 Ala. 25, 158 So.2d 667. Justice Harwood, speaking for the Court, stated as follows:

"In construing general clauses similar to the ones contained in the present policies, that is, 'death resulting directly and solely from accidental means, exclusive or independent of all other causes,' it is the doctrine of our cases that if the accident aggravated a disease and hastened the death of the insured, the accident is yet considered the proximate cause of the insured's death, notwithstanding the gravity of the disease or that the accidental injury would not have been fatal but for the infirmity. First National Bank of Birmingham v. Equitable Life Assur. Soc., of United States, 225 Ala. 586, 144 So. 451, and cases cited.

"The Equitable case, supra, enunciates the further doctrine that where a policy contains the additional clause pertaining to death resulting wholly or in part, directly or indirectly, from disease or bodily infirmity, then if the disease, in cooperation with the accidental injury, is an efficient cause of death, then there can be no recovery.

"However, as stated in the Equitable case, supra, by Bouldin, J., 'But this does not mean that mere feebleness, nor predisposition to recurrence of former disease, nor every infirmity which may aggravate the effects of an accidental injury, is to be regarded as the cause of death,' and further, 'The general rules of construing insurance policies favorably to the insured apply to these clauses, touching bodily infirmity, etc.'

"If an injury starts a chain reaction resulting in death, recovery may be had even if one of the links in the chain is old age, frailty and some links are dormant diseases or physical conditions without which the chain would be broken. New York Life Insurance Co. v. McGehee, 5 Cir., 260 F.2d 768.

"Where the evidence is conflicting as to whether an accident was the cause of an insured's death, or whether the accident and a disease cooperating therewith combined to cause death, then ordinarily a question of fact within the resolution of the trier of fact is presented. John Hancock Mut. Life Ins. Co. v. McCreary, 37 Ala.App. 493, 70 So.2d 817; Emergency Aid Ins. Co. v. Connell, 258 Ala. 521, 63 So.2d 603; Metropolitan Life Ins. Co. v. Halsey, 230 Ala. 193, 160 So. 248." Id., at 33, 158 So.2d at 673.

In New York Life Insurance Company v. McGehee, 260 F.2d 768 (5 Cir.), the defendant insurance company took the position that at the time of the accident, the insured had arteriosclerosis, among other conditions, which contributed to or caused his death. The policy sued on in that case contained both a general clause and an exception clause. Justice Wisdom, speaking for the court, stated on pp. 772–773 of the opinion as follows:

"A review of the Alabama cases and the decisions of this Court shows that considerable latitude must be allowed the jury in determining the question of causation. An insurer cannot escape liability simply by showing that some disease may have contributed to some extent to the insured's death. Most elderly people have some ailment, some latent disease. When an old person is injured, almost invariably an ailment is aggravated, a dormant disease is activated, and the effects of the injury intensified because of general frailty and lack of resistance to illness. Progressive weakness and increasing complications follow any time an old person is put to bed for any length of time. In every case therefore it is difficult to separate the effects of the accident from the effects of disease. The insurer would have us hold that there can be no recovery unless Death is present at the scene of the accident, or openly waits in continuous attendance on an injured from the moment of injury to the moment of death. Alabama courts, and this Court, take a more reasonable view. * * *"

We therefore hold that the jury in the instant case was erroneously charged as to the legal effect of the phrase, "solely as a result of an accident through external, violent and accidental means," and that the trial judge properly granted appellee's motion for a new trial in the cause.

Affirmed.

. All the Justices concur except SIMPSON, J., not sitting.